KAHL v. LOVE.

1. A collector of taxes gave a receipt, upon the receipt of a check, for the taxes due on a certain lot; such receipt was exhibited to a purchaser of the lot to show its discharge from the tax at the time of the sale; the check being unpaid, the city enforced the tax against the property in the hands of the purchaser. *Held*, such purchaser could not maintain a suit for the loss sustained by him against the collector.

2. It was *further held* that the position was not changed by the knowledge of the collector that his receipts were sometimes used as certificates that property was clear of taxes.

3. A tax collector is neither authorized or required to give certificates that property is discharged from taxes, and his receipts, given in the ordinary course of business, if used for such purpose, must be so used at the peril of those who rely upon them.

4. Actionable negligence exists only when the party, whose negligence occasions the loss, owes a duty, arising from contract or otherwise, to the person sustaining such loss.

On rule to show cause.

Argued at November Term, 1873, before BEASLEY, Chief Justice, and Justices WOODHULL, DEPUE and VAN SYCKEL.

For the plaintiff, *Joseph F. Randolph, Jr.*

For the defendant, *Dixon.*

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE. The defendant was a collector of taxes in Jersey City, and upon receiving the check of a land owner in payment of certain taxes, gave to him a receipt in full. The lands, which were the subject of these taxes, were sold to the plaintiff, he assuming that they were unencumbered by any tax, in view of the defendant's receipt, which was, at the time he made the purchase, exhibited to him. The check, upon which the defendant's receipt was founded, being dishonored when presented for payment, the taxes in question

Kahl v. Love.

were levied and made out of the lands in the hands of the plaintiff. The plaintiff complains that he was misled by the receipt given by the defendant, as collector of taxes, and this suit was brought to compensate him for the damage he thereby suffered.

The strongest light in which this case can be regarded in favor of the plaintiff is to assume that there is some evidence from which a jury might properly infer that the defendant, when he gave the receipt, was aware that such vouchers were sometimes used, on the sale of city land, as testimonials that the taxes upon them were paid up. It would be the province of the jury to find this fact, but I shall consider it as established, for the purpose of a consideration of the controversy in its form most favorable to the validity of the action. Upon the premises thus conceded will the suit lie.

In the brief of counsel it is claimed that the receipt given by the defendant was either, first, a fraud upon the plaintiff, or, if not a fraud, that it was, second, an act of negligence, resulting in loss to the plaintiff, and that on either of these grounds the action can be sustained.

The former of these grounds I think is obviously untenable. Legal fraud consists in wilfully inducing a belief, to the detriment of another, in the existence of a state of facts which the fraud-doer is aware does not exist. There was no such malfeasance as this in the present case. When the defendant gave the receipt in question he believed, and had just ground to believe, that its contents were true. When he took the check upon which it was founded, he had a right to conclude that a sum of money was in the bank adequate to its payment. And, assuming such circumstance to exist, the transaction did amount to payment, in the absence of any subsequent misconduct in the party giving the check. The giving of a check is not a mere promise to pay; it is more, for it embraces an implied assertion on the side of the giver of it that he has funds on deposit to meet it when presented, Every creditor who gives a receipt on the strength of the check of his debtor, acts in reliance on this implied assurance.

Kahl v. Love.

If the money is on deposit the check is actual payment, and could be so pleaded if, after receiving it, the creditor should sue for the same debt. The consequence is, that this receipt of the defendant was not false to his knowledge, for he was fully warranted in believing it to be true. It turned out that it was not true in point of fact, because he was deceived by the tax payer. Nothing is more common in mercantile practice than the giving of acquittances in full on the receipt of checks, and it is presumed that it would be a surprise to creditors to be told that, when they make such acquittances, they consciously mistake the fact of payment. The truth is these receipts in full are given on these payments by checks, because it is implicitly believed that the debts are thereby paid. The business in question was transacted in the ordinary mode, and it would seem to be a very unjustifiable conclusion to say that the defendant knew, when he gave this receipt, that the money was not paid. Under the circumstances a prudent man had the right to conclude that payment of these taxes was actually made to him. In the absence of facts to excite suspicion, such an inference was almost a matter of course. There was no conscious mis-statement of a fact in this case of the defendant on which this suit can rest.

Next, as to the second foundation of this action set up by the plaintiff. This is the alleged negligence of the defendant in giving this receipt, he being aware that a purchaser of this property might act upon its statements. I shall again assume the existence of the fact asserted by the plaintiff, in order to examine the case in its strongest light. On the admission that the defendant was remiss in his duty in receiving a check in payment of these taxes, and in giving a receipt in full for them, has the plaintiff a cause of action against him?

In the consideration of this query, it is of the utmost importance to observe, that the defendant, as collector of taxes, had no right to give certificates for common use that the lands taxed were discharged from assessments. There is no law requiring or authorizing him to perform such a function. If this officer should give a certificate of this kind, drawn

up in the most formal manner, the city would not be bound by it. It is his business to receive the taxes of the city, and, in the course of that business, to give receipts for the moneys thus paid. Such receipts have no greater efficacy, nor are they meant for any other use, than receipts which are given for debts as in ordinary cases. As the agent of the city, the collector has no right to give a receipt for any other purpose than as an evidence of settlement as between the tax payer and the public. And for this purpose he is obliged to give these acquittances. It is consequently clear, therefore, that in this particular, the defendant owed no duty to the owners or purchasers of lands. As one of the terms of the implied agreements of his office, he was bound to transact, with due care, the public business; and if he failed in this respect, by giving the receipt in question, it was a breach of this contract. The contract was with the public. Can an individual complain, by way of suit, of its breach by negligence?

I think no one can look at the authorities with care and impartiality, and not find that this point is conclusively settled against the contention of the plaintiff.

It is not every one who suffers a loss from the negligence of another that can maintain a suit on such ground. The limit of the doctrine relating to actionable negligence is, that the person occasioning the loss must owe a duty, arising from contract or otherwise, to the person sustaining such loss. Such a restriction on the right to sue for a want of care in the exercise of employments or the transaction of business, is plainly necessary to restrain the remedy from being pushed to an impracticable extreme. There would be no bounds to actions and litigious intricacies, if the ill effects of the negligences of men could be followed down the chain of results to the final effect. Under such a doctrine, the careless manufacturer of iron might be made responsible for the destruction of a steamer from the bursting of a boiler, into which his imperfect material, after passing through many hands and various transformations, had been converted. To avoid such absurd consequences, the right of suit for such a cause has

been circumscribed within the bounds already defined. That this is a correct statement of the legal rule, will readily appear, by a reference to a few of the numerous cases upon this subject, and of which *Winterbottom* v. *Wright*, 10 *Mees. & W.* 109, is a leading one. This suit was for negligence, which had finally ensued in damage to the plaintiff. The question arose on demurrer. The declaration showed that the defendant had contracted with the Postmaster-General to provide a mail coach to convey the mail bags along a certain line of road; that the plaintiff had been hired by certain persons, who were under contract with the postmaster, to drive the coach; and that the plaintiff had sustained an injury while driving such coach, by its breaking down from latent defects in its construction. It was decided that these facts laid no ground of action—the ground of decision being, that the contract was made with the Postmaster-General alone, and that the defendant owed no duty to any body else. And in estimating the force of this precedent, it is proper to note that the consideration so much urged on the present occasion, that the defendant is chargeable with notice that his carelessness was likely to affect third parties, was not overlooked by counsel in the case in the Exchequer. The argument was thus put: " Here the defendant entered into a contract with a public officer to supply an article which, if imperfectly constructed, was necessarily dangerous, and which, from its nature and the use for which it was destined, was necessarily to be driven by a coachman." But the contention did not prevail, the court saying: " If we were to hold that the plaintiff could sue in such a case, there is no point at which such actions would stop. The only safe course is, to confine the right to recover to those who enter into the contract; if we go one step beyond that, there is no reason why we should not go fifty." The same rule is exemplified in *Longmeid* v. *Holliday*, 6 *Exchequer* 761, which holds that one who sells a defective article to be used for a particular purpose, for which it is not fit, is not, in the absence of fraud, liable for an injury caused to a third person, by some defect

in the construction of such article. In this authority, as in the previous one, the right to sue was strictly confined to the person to whom the duty was due under the contract.

The last illustration to which I shall refer is the recent case of *Collis* v. *Selden,* reported in *L. R.,* 3 *C. P.* 495. The declaration charged that the defendant wrongfully, negligently, and improperly hung a chandelier in a public house, knowing that the plaintiff and others were likely to be therein and under the chandelier; and that the chandelier, unless properly hung, was likely to fall upon and injure them; and that the plaintiff being lawfully in the public house the chandelier fell upon and injured him. In deciding that, in these statements a legal cause of action was not disclosed, the court put themselves on the principle heretofore propounded, that is to say, that the defendant apparently owed no duty, by contract or otherwise, to the plaintiff, and that if the door was opened to such a claim there would be no end to actions. One of the judges, in the conclusion of his opinion, referring to the plaintiff, says: " I cannot see any relation, which he bears to the defendant whence a duty could result which has been infringed." It seems to me that is precisely the reason why the present suit will not lie. So far as the plaintiff, as an individual, was concerned, the defendant did not owe the duty of care in the transaction of the business, in the course of which the receipt arose, and being a stranger to that business and to the contract on which it rested, he is too far removed from it to have the right to complain in a court of justice, on the ground that he has been injuriously affected by the careless mode in which it was transacted. In view of the cases cited, and the rule of law which they establish, it does not seem to me that on the assumption of every fact which can, by possibility, be claimed for the case of the plaintiff, the present action can be supported.

But, independently of the foregoing propositions, in my opinion there is another ground which ought to be decisive against the prevalence of this action. It is this, the plaintiff had no right to construe the receipt in the sense of an ac-

knowledgment of absolute payment. His mistake was in supposing he had a right to treat it as an acknowledgment that so much cash was paid. This he had not a right to do, because the instrument in question does not necessarily have that import. A receipt, in law, must be construed in connection with the facts connected with its origin; and in the light of the circumstances it may mean an acknowledgment of the absolute payment of the debt, or the conditional payment of the debt. The decisions are clear and abundant on the subject, that when the receipt, or other memorandum of the transaction speaks of payment, or even of payment in full, it shall, if the case calls for it, be interpreted as meaning conditional payment, to be in full when paid. For the cases in in this line, I refer to the notes to *Tobey* v. *Barber*, 2 *Am. Lead. Cas.* 246. If the plaintiff then, or any body else, or any number of persons, has seen fit to look upon these receipts given by the collector as importing absolute payment, when in law they do not necessarily bear that meaning, how is the defendant to be held liable for such a misconstruction? The fact seems to be that it has become somewhat customary to regard these receipts as equivalent to official certificates that the city lands are free from the encumbrance of taxes; but as these officers do not and cannot rightly give them for such a use, it is but right that they who thus misapply them should do so at their peril.

I can see in the facts before the court not the slightest ground on which to charge the defendant with a fraud in the business now in question. If I was called on to decide the facts, I should find that the defendant was not chargeable with any negligence; but admitting such negligence to exist, and that as a remote effect, the plaintiff has been injured by it, I am satisfied no action at law will lie on that basis.

A new trial should be granted.