THE MARVIN SAFE COMPANY v. JOHN F. WARD, IMPLEADED WITH THE BOARD OF CHOSEN FREEHOLDERS OF THE COUNTY OF ESSEX AND THE BOARD OF CHOSEN FREEHOLDERS OF THE COUNTY OF HUDSON.

1. In an action on the case for negligence, the allegation of a duty will not sustain or aid a pleading. The sufficiency of the pleading must be determined upon the facts from which the duty is deduced.

2. The general rule is that one who is not a party to a contract cannot sue in respect of a breach of duty arising out of the contract. There is a class of cases in which a person performing services or doing work under a contract may be held in damages for injuries to third persons, occasioned by negligence or misconduct in the execution of the contract; but these are cases where the duty or liability arises independent of the contract, and in such cases the plaintiff must count upon a wrongful act or negligence—a *tort* as distinguished from a mere breach of contract.

3. *Levy* v. *Legrange*, 4 *M. & W.* 333, and *Winterbottom* v. *Wright*, 10 *Id.* 109, commented on. Winterbottom *v.* Wright, approved.

---

On demurrer to plea.

Argued at November Term, 1883, before BEASLEY, CHIEF JUSTICE, and Justices DEPUE, VAN SYCKEL and KNAPP.

For the plaintiff, *T. N. McCarter*.

For the defendants, *John Linn*.

The opinion of the court was delivered by

DEPUE, J.   The principal defendants, the boards of chosen freeholders of the counties of Essex and Hudson, became entitled to the property and franchises of "The Proprietors of the Bridges over the Rivers Passaic and Hackensack," under proceedings taken under an act of the legislature passed March 14th, 1871.   *Pamph. L., p.* 500.   The legislation in relation to those bridges prior to the act of 1871, is stated in *Ripley* v. *Chosen Freeholders*, 11 *Vroom* 45.

The bridge over the Passaic having become unsafe and unfit for use, the boards of chosen freeholders of the two counties, on the 21st of August, 1881, contracted with Ward, the other defendant, for the erection of a new bridge.   This contract is under seal, and in two parts—each board having made a separate contract for the same work, identical in terms, and each covenanting to pay a sum which is one-half of the contract price.   Each contract provides for a temporary roadway or bridge, to accommodate the travel whilst the permanent bridge was being constructed.

Ward entered upon the performance of the work, and constructed a temporary bridge.   This temporary bridge, on the 15th of November, 1881, gave way whilst a team of the plaintiff was being driven over it, whereby the plaintiff's team and truck, and its load were precipitated into the river. For the damages sustained the plaintiff's sued the boards of freeholders of the two counties, and Ward, the contractor, in one suit in the form of an action on the case.   The case is before the court at this time on a demurrer to one of the pleas filed by Ward.

The contracts between Ward and his co-defendants stipulate that the work should be commenced on or before the 15th of September, 1881, and that the permanent bridge should be completed and ready for travel within twenty-nine working

days from that date, with an agreement that $50 should be deducted from the contract price for each day the work should be delayed beyond the specified time; and there are allegations in the declaration of negligence in the failure to complete the bridge within the time fixed by the contract. The stipulation on this subject must be laid out of the case in every phase of this litigation; for the duty to provide bridges suitable and proper for travel, is a public duty, and the general rule is that, independent of a statute, no suit will lie against the public authorities for the recovery of damages occasioned by the mere non-performance of such a duty—the remedy being by indictment or *mandamus*. *Reock* v. *Mayor, &c., of Newark*, 4 *Vroom* 129; *Pray* v. *Jersey City*, 3 *Vroom* 394; *Stew. Dig., tit. "Bridges," p.* 112, § 14. The statute (*Rev., p.* 1017, § 121,) which was before the court in *Livermore* v. *Freeholders*, 5 *Dutcher* 245; *S. C.*, 2 *Vroom* 507, does not apply to the mere omission or delay in the completion of the work. It relates to injuries sustained by travelers, arising from the insufficiency or want of repair of a bridge in actual use, and leaves intact, in other respects, the general doctrine of the law that a suit cannot be maintained for the omission by public authorities to perform a public duty. Nor will the act of 1860, (*Rev., p.* 86, § 9,) which was before the court in Ripley v. Freeholders, aid the plaintiff in this respect. The engagement of Ward to complete the work within a designated time was wholly a matter of contract between him and the boards of freeholders. If the freeholders saw fit, they might give the contractor further time, or indulge him in delays in the progress of the work, without subjecting him to liability for the inconvenience suffered by individuals, and they provided the means of securing the completion of the work within the stipulated time by a *per diem* deduction from the contract price.

The plaintiff's case, as it relates to each and all of the defendants, is restricted to the cause of action arising from the alleged unsafe condition of the temporary bridge.

The declaration commences with an allegation of the duty of the board of freeholders of the two counties to keep and

maintain the bridge and draw in good repair, so that it would at all times be safe and in good condition for the passage of horses and vehicles, with their loads, over and across said bridge.

The allegations on this head, so far as they relate to Ward, are that, by his contracts with his co-defendants, he agreed that he would, on or before the 15th day of September, 1881, erect a good, substantial temporary roadway over said river and the approaches to the same, according to the specifications to the said contract annexed—such temporary roadway to remain until the completion of the bridge, and that he, the said Ward, should be liable for all damages sustained by reason of any defective or improper construction of said work. It is also averred that, by the specifications annexed to the contracts and referred to therein and made part thereof, it was provided that the said contractor should execute the whole work provided for, and that the travel should be accommodated by means of a temporary roadway at least twenty feet wide, and a draw forty feet opening, that could be easily worked by one man, and that if more than one man was required, said Ward was to furnish another.

The declaration then avers that by reason of the premises, it became and was the duty of all the defendants to construct and cause to be constructed the said temporary roadway and draw in a good and sufficient manner, so as to make it sufficiently strong and safe for the passage of horses, wagons and their loads, over and across the same.

The breach assigned, is, that the defendants did not construct or cause to be constructed across said river the temporary roadway and draw in a good and sufficient manner, &c., but did construct said temporary roadway and draw in such a weak, unsafe, improper and insecure manner as to render the same wholly unfit for the accommodation of the public travel.

To this declaration Ward filed several pleas, in one of which he pleaded that he constructed the said temporary roadway and draw in the manner and according to the plans and specifications mentioned and referred to in his said contracts,

and according to the directions of the said boards of freehold-ers, and that he did not omit anything required of him by the terms of the said contracts; so that, if the said temporary roadway and draw were not sufficient for the purpose intended, and for the accommodation of the public travel, it was not his neglect or default.

To the latter plea this demurrer was filed.

The declaration sets out in detail the terms of the contract between Ward and his co-defendants. His undertakings with them under his contracts are minutely and with particularity spread upon the face of the declaration in the form of aver-ments, which make his contractual duties the *gravamen* of the plaintiff's cause of action against him. His undertakings with his co-defendants are prominently made a premise from which is deduced the duty on his part on the non-performance of which the plaintiffs place their right to recover of him, in common with the other defendants, damages for the injury sustained, and his covenant to make good to his co-defendants damages sustained by reason of defective or improper con-struction of the work, appears among the averments which lead to the duty counted upon. The allegation of a duty will not sustain or aid a pleading. It is an allegation of a mere matter of law, and is not traversable; the sufficiency of the pleading must be determined upon the facts from which the legal duty is deduced. *Seymour* v. *Maddox,* 16 *Q. B.* 326. It is plain upon the face of the declaration that the obligations of this defendant to his co-defendants, arising from the terms of his contract with them, are made the foundation of the plaintiff's cause of action against him.

The general rule of law is, that one who is not a party to a contract, cannot sue in respect of a breach of duty arising out of the contract. *Alton* v. *Midland R. R. Co.,* 19 *C. B.* (*N. S.*) 213. The leading case on this subject is *Levy* v. *Langridge,* 2 *M. & W.* 519; *S. C.,* 4 *Id.* 337. There a stranger to the contract was allowed to sue, but the decision was expressly placed upon the ground of fraud. This case was succeeded in point of time by *Winterbottom* v. *Wright,* 10 *M. & W.* 109. In

that case A contracted with the postmaster-general to provide a mail-coach to convey the mail-bags along a certain line; and B contracted to horse the coach along the same line. B hired C to drive the coach. It was held that C could not maintain an action against A for an injury sustained by him while driving the coach, by its breaking down from a defect in its construction. The ground of decision was that the defendant's duty with respect to the sufficiency of the coach arose from his contract; and, there being no privity of contract between him and the plaintiff, he was under no obligation to the plaintiff on which the latter could sue. Winterbottom *v.* Wright has been followed with constant approval in a series of decisions in the English courts. *Longmeid* v. *Holliday,* 6 *Exch.* 761; *Blackmore* v. *B. & E. R. R. Co.,* 8 *E. & B.* 1035, 1049; *Redie* v. *R. R. Co.,* 4 *Exch.* 244; *Allen* v. *Midland R. R. Co., supra; Collis* v. *Selden, L. R.,* 3 *C. P.* 495; *Whart. Neg.,* §§ 430, 440. Its standing as an authority was not impaired by the decision of the Court of Appeals in *Heaven* v. *Pender,* 9 *Q. B. Div.* 503. This court and the Court of Errors, substantially adopted the doctrine of Winterbottom *v.* Wright, by holding that no duty to a third person could arise out of a contract to which he was a stranger. *Cuff* v. *N. & N. Y. R. R. Co.,* 6 *Vroom* 17, 574.

The reason on which this doctrine rests is obvious. The object of the parties in inserting in their contract specific undertakings with respect to the work to be done is to create obligations and duties *inter sese.* These engagements and undertakings must necessarily be subject to modifications and waiver by the contracting parties. If third persons can acquire a right in the contract in the nature of a duty to have it performed as contracted for, the parties will be deprived of control over their own contract—the employer will have taken from him the power to direct how the work shall be done, and the employe may find himself under responsibilities to third parties which do not exist between him and his employer. The inconvenience which would arise from allowing a third person to have such an interest in a contract to which he was

not a party is referred to by Lord Abinger in Winterbottom *v.* Wright. He said : "The plaintiff in this case could not have brought an action on the contract; if he could have done so, what would have been his situation supposing the postmaster-general had released the defendant? that would at all events, have defeated his claim altogether. By permitting this action [which was an action on the case for negligence,] we should be working this injustice, that after the defendant had done everything to the satisfaction of his employer, and after all matters between them had been adjusted, and all accounts settled on the footing of their contract, we should subject them to be ripped open by this action of *tort* being brought against him."

No injustice can arise from the application of the principle adjudged in Winterbottom *v.* Wright; for if the work contracted for be such as that a duty exists towards third persons with respect to it, the party who contracts to· have the work done will be liable for damages arising from a breach of the duty, although the injury arose from the fault of the person with whom he contracted. *Hole* v. *S. & S. Railway Co.*, 6 *H. & N.* 488. And he will have remedy over against the wrong-doer, either under his express contract to pay damages, or under a contract to that effect which the law will imply. *Inhabitants of Woburn* v. *Henshaw*, 101 *Mass.* 193 ; *Chicago* v. *Robbins*, 2 *Black* 418; *S. C.*, 4 *Wall.* 657; *City of Brooklyn* v. *Brooklyn City R. R. Co.*, 47 *N. Y.* 475, 481.

There is a class of cases in which a person performing service or doing work under a contract may be held in damages for injuries to third persons, occasioned by negligence or misconduct connected with the execution of the contract; but these are cases where the duty or liability arises independent of the contract. Thus, a servant carried as a passenger under a contract to carry, made with his master, who purchased the ticket, may sue the carrier for personal injuries, or for the loss of his luggage, through the, negligence of the carrier. Here the carrier's liability does not depend upon the contract; the fact that the servant is a passenger casts a duty on the carrier to carry him and his luggage safely. He may sue in case for

a breach of that duty, but he could not sue upon the contract. *Marshall* v. *York R. R. Co.*, 11 *C. B.* 655; *Austin* v. *G. I. P R. R. Co.*, *L. R.*, 3 *Exch.* 9; *Whart. Neg.*, § 439; *Dicey on Parties* 19. *Dalyell* v. *Tyrer*, *E.*, *B. & E.* 899, which is sometimes cited as being in conflict with Winterbottom *v.* Wright, belongs to the class of cases just mentioned. So, also, to quote the language of Parke, B., "if a mason contracts to erect a bridge or other work in a public road, which he constructs, but not according to contract, and the defects of which are a nuisance to the highway, he may be responsible for it to a third person who is injured by the defective construction, and he cannot be saved from the consequences of his illegal act by showing that he was also guilty of a breach of contract and responsible for it." *Longmeid* v. *Holliday*, 6 *Exch.* 767. In cases of this description the wrong done and the liability for it are independent of the contract, and that liability is not taken away by the mere fact of the existence of a contract between the wrongdoer and some third person. But it is unnecessary to pursue this subject further, or at this time to examine into the bounds or applicability of this doctrine to the situation of these parties. That question is not now before the court. The plaintiff's declaration sets out the terms of the contract between the contractor and his co-defendants and relies upon it, and the plea demurred to is substantially an averment of performance of the contract as between the contracting parties.

Nor will the fact that the defendant's contract related to a structure for public use alter the position of this case. Two New York cases were cited on this head—*Robinson* v. *Chamberlin*, 34 *N. Y.* 389, and *Johnson* v. *Belden*, 47 *Id.* 130. In those cases the court held that individuals who, in pursuance of a statute, contracted with the state to keep the canals in repair were liable in damages for injuries to a canal boat caused by the want of repair of a lock. The liability was put upon the ground that the contractors were public officers, and that the contract to repair created a duty analogous to that which might arise from an obligation to repair by prescription *ratione tenure*, or by act of parliament. The reasoning of these cases

does not apply to the case in hand. The statute on this subject is explicit. It lays the duty of making and repairing bridges upon the boards of chosen freeholders, and imposes upon them liability for the insufficiency or want of repair. The power to plan the structure of a bridge, to contract for building it, and specify the materials and workmanship, is implied. Such a contract creates the ordinary relation of employer and employe. It does not put off from the board of chosen freeholders the duty and responsibility which the statute fixes upon them; nor does it create any duty or liability on the part of the other contracting party, except such as arises *inter sese* from the terms of the contract.

The defendant, by this plea, exonerates himself from all blame. He repels the imputation of personal negligence on his part, and avers that if the temporary roadway and draw were not adequate for the purpose intended, the inadequacy was not due to any neglect or fault on his part. The criticism on this plea is that it does not aver that the temporary bridge was a good and substantial roadway. If this criticism be well founded, then the contractor for a railroad bridge will be responsible to passengers injured, for defects in the bridge due to imperfections in the architect's plans; and the contractor for the Brooklyn bridge would be under a responsibility for the insecurity of the structure occasioned by defects in the plans of the engineer. The answer to this criticism is that the defendant was under no obligation to make the temporary roadway a good and substantial structure, except under the terms of his contract, and that if he was in no personal default, he cannot be held for the injuries sustained.

In *Hyams* v. *Webster*, L. R., 2 Q. B. 264, the defendant, under a contract with the metropolitan board, opened a public highway for the purpose of constructing a sewer. Three or four months after the work was finished, damage ensued from plaintiff's horse stumbling in a hole in the road. The filling in of the road had been properly done by the defendant, and the hole was owing to the natural subsidence of the materials, which sometimes takes place sooner or later after such an

excavation. The jury negatived negligence in the filling in. The court held that the obligation of the defendant as between him and the public ceased as soon as he had properly reinstated the road, and that it was the duty of the authorities to look after the subsequent repairs, whether rendered necessary by subsidence or ordinary wear and tear; and that there being no personal negligence in the defendant, he was not liable. This judgment was affirmed on appeal. *L. R.,* 4 *Q. B.* 138.

The plea demurred to is a complete answer to the *gravamen* of the plaintiff's cause of action as set out in his declaration; and we also think that the declaration, being founded on the contracts between the defendants, is not in proper form as against the defendant. If he is liable for the injury complained of, it must be upon the ground of some wrongful act or negligence—a *tort* as distinguished from a mere breach of contract; and the declaration does not contain the necessary averments to charge a tortious act. Precedents appropriate to such a case will be found in *Hyams* v. *Webster, supra,* and in *Gray* v. *Pullen,* 5 *B. & S.* 970.

On either ground there must be judgment against the plaintiffs on this demurrer.