Fred WESTERHOLD, Jr., Appellant,

v.

Maurice CARROLL, Respondent.

No. 52480.

Supreme Court of Missouri,
Division No. 2.

Sept. 11, 1967.

Motion for Rehearing and to Transfer to
Court En Banc Denied Oct. 9, 1967.

David Y. Campbell, St. Louis, for appellant.

Keefe, Schlafly, Griesedieck & Ferrell, Robert F. Schlafly, St. Louis, for respondent.

STOCKARD, Commissioner.

Plaintiff has appealed from the judgment of the Circuit Court of the City of St. Louis sustaining a motion to dismiss plaintiff's petition on the ground that it fails to state a claim upon which relief may be granted.

We shall summarize portions of the petition, but shall quote other portions when necessary to set forth plaintiff's claim.

On May 6, 1959, Westerhold Construction, Inc. (hereafter referred to as "contractor") entered into a written agreement (hereafter referred to as the "construction contract") with the Archdiocese of St. Louis of the Catholic Church (hereafter referred to as "owner") whereby the contractor was to construct a church and rectory in accordance with drawings and specifications prepared by defendant. On May 15, 1959, the contractor, as principal, and Maryland Casualty Company, as surety, executed a performance bond in the amount of $325,322.00, and a labor and material payment bond in the amount of $162,661.00, in favor of the owner, "as required by and pursuant to the terms of said written agreement," and on May 6, 1959, as an inducement to said Maryland Casualty Company to execute said bond as surety thereon, by written agreement plaintiff agreed to indemnify and hold harmless said Maryland Casualty Company against any liability for damages, loss, cost, charges and expenses which it might sustain or incur by reason of having executed said bonds as surety. By the terms of the construction contract, the performance of the contractor was "under the supervision of and was subject to the inspection of defendant," and payments by the owner to the contractor for work performed and materials furnished were required to be made "upon certification by defendant, as the architect, to said owner that payments requested by [defendant] from time to time during the progress of said job, for work stated to have been performed * * * and for materials furnished and delivered * * * had, in fact, been performed and delivered on the job, and that the amounts of such payments so requested, from time to time, correctly reflected the percentage of the work actually then performed and the percentage of materials then supplied and delivered on the job." At various times prior to May 4, 1960, defendant certified to the owner that the contractor had completed work and had furnished materials "of the total value of $229,628.00," and the owner, relying upon said certifications by defendant, had paid to the contractor the sum of $206,665.20, which represented 90% of the value of the work and material certified by defendant as having been performed and furnished. However, at the time of the said certificates made by defendant "the amount of work which actually had been performed by [the contractor] was substantially less than the value thereof certified by defendant as having been performed and furnished," and

the said certificates "were false and inaccurate" as to the total value of the work performed and materials furnished by the contractor by an amount in excess of $23,000. Subsequently the contractor defaulted under the construction contract, and the owner, pursuant to the terms of the construction contract, declared the contractor to be in default and called upon Maryland Casualty Company, as surety, to complete and carry out the terms of the construction contract. The surety did complete the contract and in doing so incurred expenses in excess of $93,234.23, and made demand upon plaintiff for payment pursuant to plaintiff's obligations under the previously described indemnification agreement, and plaintiff was required to expend and pay to the said surety the sum of $17,500.00 in full settlement of his liability as indemnitor, and was caused to incur other expenses in the amount of $2,250.00. The loss, damages, and expenses incurred by plaintiff as indemnitor "were directly and proximately caused by the carelessness, negligence and wrongful acts of defendant in that defendant as architect * * * wrongfully and negligently failed to inspect and supervise the work performed and the materials furnished and delivered by said [contractor] * * *; and negligently, carelessly and wrongfully performed his duties as said architect, in falsely and incorrectly certifying, for payment by the [owner], to amounts and values of work performed and materials furnished and delivered by said [contractor], in an aggregate sum substantially in excess of the amount of work performed and the amount of materials actually furnished and delivered, so as to result in a substantial overpayment to said [contractor], thereby leaving an amount yet to be paid under [the construction contract] substantially smaller than the amount of work left to be performed and the amount of materials left to be supplied and delivered, in order to comply with the terms and provisions of said [construction contract]." Defendant, in his capacity as architect, knew or should have known,

by the exercise of ordinary and reasonable care, that the amounts so certified by him for payment were substantially in excess of the value of the work actually performed and the materials actually supplied and delivered, and he "thereby acted carelessly and negligently in the performance of his duties as such architect." Plaintiff prayed judgment against defendant in the amount of $20,000.

The motion to dismiss the petition alleged not only that the petition fails to state a claim upon which relief may be granted, but also that the action is barred by limitations. The trial court sustained the motion on the first ground only. In his brief to this court, respondent has not attempted to demonstrate that if the petition does state a claim the action is barred by limitations. We consider this latter issue as not before us.

The construction contract is not attached to and made a part of the petition. From the allegations in the petition we cannot determine whether defendant was a party to the construction contract in the sense that he signed it along with the contractor and owner, or whether there was a separate contract between the owner and defendant. In any event, defendant's duties, or at least those duties material to the issue in this case, were set forth in the construction contract, and he purported to perform them pursuant thereto. No issue on this appeal is made concerning the source of his contractual obligations, or that they were other than alleged. Under the standard form of contract prepared by the American Institute of Architects the architect is designated as an arbitrator, see 12 Vanderbilt Law Rev. at p. 718 et seq., and in some contracts the architect's certificate as to work performed is stated to be conclusive. See § 2 of Annotation, 54 A.L.R.2d 1227. However, the allegations in the petition do not demonstrate that either of these conditions exist, and for the purposes of this appeal we do not presume their existence or rule their effect if present.

By the terms of the construction contract defendant was to inspect and supervise the performance of the work by the contractor, and payment to the contractor was authorized upon a certificate by defendant that the work actually had been done and the materials actually had been furnished by the contractor for which payment was sought. The construction contract also required that the contractor furnish a performance bond and a labor and material payment bond, and this was done by Maryland Casualty Company. While it is not specifically alleged that in issuing the bonds Maryland Casualty Company relied on the provisions of the construction contract providing for inspection and supervision of the work by defendant and also relied on the provisions for payment by the owner only upon certificates of defendant, it is a fair inference from the facts alleged that Maryland Casualty Company knew of those provisions and appreciated the fact that "to guarantee the performance of a contract where progress payments are adequately safeguarded is a less hazardous risk than to guarantee the performance of a contract where there are no safeguards." Hall v. Union Indemnity Co., 8th Cir., 61 F.2d 85, 88. As expressly stated in that case, "such provisions in a contract are as much for the protection of the surety as of the owner."

■ Plaintiff is not the surety, but is the indemnitor of the surety. Plaintiff does not specifically allege that the indemnity agreement provided that he would be subrogated to claims by the surety against the architect. However, he does allege that as indemnitor of the surety he was compelled to satisfy, at least in part, the liability of the surety. Generally speaking, an indemnitor of a surety compelled to satisfy the liability of a surety is subrogated to all rights to which the surety would have been subrogated. 83 C.J.S. Subrogation § 62; 50 Am.Jur. Subrogation § 36. In compliance with our rule to construe the petition liberally and to accord to it every reasonable inference from the facts alleged, Myers v. City of Palmyra, Mo., 355 S.W.2d 17, 92 A.L.R.2d 791, we shall proceed on the theory that plaintiff is subrogated to the claims of the surety, and that he may maintain such action against the architect for the negligence alleged which could have been maintained by Maryland Casualty Company. In our following discussion we shall refer only to the right of the surety in this respect.

Plaintiff's petition is based on negligence, and the immediate issue is whether in the absence of privity of contract the facts stated in the petition imposed upon defendant a legal duty to the surety to exercise ordinary care in executing the certificates called for in the construction contract, so that he would not authorize payments to the contractor in excess of the amount provided for in the construction contract.

In the article by Bohlen, Fifty Years of Torts, 50 Harvard Law Review, 1225, at p. 1232, it was pointed out that the requirement of privity stems from an English case decided in 1842, Winterbottom v. Wright, 10 M. & W. 109, 152 Eng.Rep. 402, which announced that one who was not a party to a contract could not recover for its negligent performance, or that a defendant who had contracted with another owed no duty to a plaintiff who was not a party to the contract where there was no privity or direct transaction between them. This doctrine was illustrated by Roddy v. Missouri Pac. Ry. Co., 104 Mo. 234, 15 S.W. 1112, 12 L.R.A. 746, a suit for personal injuries sustained by an employee of a quarry owner as the result of the railroad's negligence in the performance of a contract under which the railroad furnished the quarry owner cars for the transportation of stone. In the Roddy case this court said: "The right of a third party to maintain an action for injuries resulting from a breach of a contract between two contracting parties has been denied by the overwhelming weight of authority of the state and federal courts

of this country and the courts of England." This rule was based upon two principal grounds. The first was the apprehension that legal protection of this kind of an interest would lead to excessive and unlimited liability, and would "lead to endless complications in following out cause and effect. Roddy v. Missouri Pac. Ry. Co., supra. In Winterbottom v. Wright, this ground was stated this way: "If we were to hold that the plaintiff could sue in such a case, there is no point at which such actions would stop. The only safe rule is to confine the right to recover to those who enter into the contract: if we go one step beyond that, there is no reason why we should not go fifty." See also Kahl v. Love, 37 N.J.L. 5. The second ground advanced for the above result was that a contrary holding "would restrict and embarrass the right to make contracts by burdening them with obligations and liabilities to others which parties would not voluntarily assume." Roddy v. Missouri Pac. Ry. Co., supra. In Marvin Safe Co. v. Ward, 46 N. J.L. 19, at p. 24, this second ground was stated as follows: "The object of the parties in inserting in their contract specific undertakings with respect to the work to be done is to create obligations and duties *inter sese*. These engagements and undertakings must necessarily be subject to modifications and waiver by the contracting parties. If third persons can acquire a right in the contract in the nature of a duty to have it performed as contracted for, the parties will be deprived of control over their own contract * * *."

This rule requiring privity has not been followed blindly and without exception. As stated in Prosser on Torts 2nd ed. § 84, p. 498, when the application of the rule would produce a result contrary to the requirements of essential justice and sound public policy it has been whittled away by exceptions. In fact, throughout the years so many exceptions have been engrafted upon the rule that it has been said, perhaps too broadly, that the exceptions have "swallowed the rule." LaPlant v. E. I. DuPont de Nemours & Co., Mo.App., 346 S.W.2d 231. See also the annotation at 74 A.L.R. 2d 1111, and Carter v. Yardley & Company, 319 Mass. 92, 64 N.E.2d 693, 164 A.L.R. 559. As early as 1931 Judge Cardozo stated that "The assault upon the citadel of privity is proceeding in these days apace." Ultramares Corporation v. Touche, 255 N.Y. 170, 174 N.E. 441, 445, 74 A.L.R. 1139. In recent years the rule requiring privity has been further eroded and the exceptions have been extended into new fields and areas. No exhaustive listing of cases is necessary or appropriate; it is sufficient to note that in this state exceptions to the general rule have been written into the law allowing recovery for negligence in the absence of privity in cases, among others, where an act of negligence is imminently dangerous to the lives or safety of others or the thing dealt with is inherently dangerous (see the Missouri cases collected in the annotation, Product Causing Injury-Liability, 74 A.L.R.2d 1111, § 56, p. 1215); in cases of fraud or collusion (Gordon v. Livingston, 12 Mo.App. 267 (dictum)); in cases involving express warranty (Worley v. Proctor & Gamble Mfg. Co., 241 Mo. App. 1114, 253 S.W.2d 532) and implied warranty (Carter v. St. Louis Dairy Co., Mo.App., 139 S.W.2d 1025); and in cases involving error in the transmission of telegrams (Barnett v. Western Union Telegraph Co., Mo.App., 287 S.W. 1064). On the other hand, in those cases in which there exists the two reasons mentioned in Winterbottom v. Wright and restated in Roddy v. Missouri Pac. Ry. Co., for imposing the requirement of privity of contract, the courts of this state have not relaxed that requirement. See Zweigardt v. Birdseye, 57 Mo.App. 462; Gordon v. Livingston, supra; Schade v. Gehner, 133 Mo. 252, 34 S.W. 576; and the recent case of Anderson v. The Boone County Abstract Company, Mo., 418 S.W.2d 123.

■ We agree with the proposition that any extension of the limits of liability in this field should be done on a case-to-case basis, with a careful definition of the limits

of liability, depending upon the differing conditions and circumstances to be found in individual cases. Two New York cases, written by the same judge, illustrate this. In 1922 Judge Cardozo wrote the landmark case of Glanzer v. Shepard, 233 N.Y. 236, 135 N.E. 275, 23 A.L.R. 1425, allowing a third party to recover for harm negligently inflicted upon an intangible economic interest. The seller of beans had them weighed by the defendant, a public weigher, who issued a certificate as to their weight, knowing that the buyer would pay on the faith of the certificate. The weigher negligently overstated the weight to the purchaser's damage. Recovery was allowed notwithstanding the lack of privity between the purchaser and the weigher. Judge Cardozo fixed liability upon the basis of a duty imposed by law arising out of the contractual relationship of the parties, indicating that diligence was owed not only to him who ordered, but also to him who relied; that the very "end and aim" of the weighing was to shape the conduct of another, and that under the circumstances "assumption of the task of weighing was the assumption of a duty to weigh carefully for the benefit of all whose conduct was to be governed." We note that the person who would be injured by the weigher's negligence was known—one person, the purchaser; that there was a certainty of injury if the weigher overstated the weight; and that the "end and aim" of the transaction was for the benefit of plaintiff, a party to the lawsuit. Nine years later the case of Ultramares Corporation v. Touche, 255 N.Y. 170, 174 N.E. 441, 74 A.L.R. 1139, came to be decided by the same judge. In that case the defendants were public accountants, employed by Fred Stern & Co. to make an audit. They negligently made and certified to a balance sheet which indicated that capital and surplus were intact, but this was in error because both capital and surplus had been wiped out and the corporation was insolvent. When Fred Stern & Co. asked plaintiff for a loan plaintiff demanded a certified balance sheet, and thereafter made the loan after relying on the erroneous balance sheet prepared by defendants. In plaintiff's suit against the public accountants they raised the defense of lack of privity. Recognizing the necessity of different rules in different circumstances, and the undesirability of a rule which would expose accountants "to a liability in an indeterminate amount for an indeterminate time to an indeterminate class" for any thoughtless slip or blunder or inattention that might fairly be spoken of as negligence, Judge Cardozo denied liability, and in doing so he pointed out that in Glanzer v. Shepard the service was rendered primarily for the information of a third person whose connection with the transaction was so close "as to approach that of privity, if not completely one with it", and only incidentally for the benefit of the formal promisee, whereas in Ultramares Corporation v. Touche the service was primarily for the client who would use it as a convenient instrumentality in the development of his business.

We shall now examine the factual situation of this case to determine whether there exists the reasons for the application of the rule requiring privity of contract.

The entire arrangement, that is, the construction contract containing the provisions for payment to the contractor upon certificates from the architect, the architect's contract with the owner, and the bonds required by the terms of the construction contract, was based upon several interrelated agreements designed to accomplish one objective, the construction of the church building and the rectory. While, strictly speaking, there may not have been privity of contract between the architect and the surety, this was a transaction in which the relation was so close, to use Judge Cardozo's words, "as to approach that of privity." The requirement in the construction contract that payments by the owner were to be made to the contractor only upon certificates issued by the architect that the work had been performed and the materials had been furnished was "as much for the protection of the surety

as the owner." Hall v. Union Indemnity Co., 8 Cir., 61 F.2d 85, 88. See also Southern Real Estate & Financial Co. v. Bankers' Surety Co., Mo., 184 S.W. 1030, 1034.[1] While the surety did not rely on the certificates after they were made, in determining whether it would enter into the surety agreement, it unquestionably did rely on the contractual provision that money would not be paid to the contractor except for work performed and materials furnished in the amounts certified to by the architect, and it "had a right to rely upon the carrying out of the terms of the contract with respect to payments." Hall v. Union Indemnity Co., supra. In this case, as in Glanzer v. Shepard, the person not in strict privity of contract who would be injured by defendant's negligence was known, and the "end and aim" of the provision of the contract with respect to payments was for the benefit of the surety, as well as for the owner. Also, to forego the requirement of privity of contract could not lead to excessive and unlimited liability or lead to endless complications in following out cause and effect. Liability for negligently authorizing payment to the contractor for more work than was actually performed, or for more materials than actually furnished, could not exceed the value of the difference between that work actually performed and the materials actually furnished, and that paid for based on the architect's certificates, and that liability could not extend to anyone not in actual privity of contract except that of a surety and its subrogees. No exposure to liability to an unlimited number, or to an indeterminate class, of potential claimants is involved. (The potential liability is strictly limited as to the total amount and one known claimant which was not in privity.) The factual situation of this case does not expose the defendant, or architects generally, "to a liability in an indeterminate amount for an indeterminate time

to an indeterminate class" for any thoughtless slip or blunder or inattention that might fairly be spoken of as negligence.

We consider that the above demonstrates that the first of the reasons advanced in Winterbottom v. Wright for the rule of privity (unlimited liability to an unlimited number of persons) is absent in the factual circumstances of this case. We are also of the opinion that the second reason (that the parties to contracts would be deprived of control over their contracts) does not exist under the pleaded facts. In the event the parties in privity mutually agree to change provisions of the contract between them inuring to the benefit of the surety, which changes result in increasing the risk of the surety, the surety is discharged from his liability under his surety agreement either wholly or to the extent of his increased risk. Southern Real Estate & Financial Co. v. Bankers' Surety Co., Mo., 184 S.W. 1030; Hall v. Union Indemnity Co., supra. In that event, neither the surety nor its subrogees could suffer any loss.

■ The reasons for the rule or requirement of privity of contract are not applicable to the facts and circumstances of this case, and as a matter of logic we perceive no reason why in such a situation privity should be required unless it be that the rule is an ancient one. Mr. Chief Justice Fortescue is reported in 3 Holdsworth, A History of English Law, to have once said: "Sir, the law is as I say it is, and so it has been laid down ever since the law began; and we have several set forms which are held as law, and so held and used for good reason, though we cannot at present remember that reason." We are not inclined to consider ourselves so restrained and bound. While we agree that ancient rules developed in the crucible of experience should not lightly be cast

1. In a subsequent appeal, 276 Mo. 183, 207 S.W. 506, certain unidentified "expressions" in the opinion of the cited case were "overruled," but we conclude that the principle for which the case is here cited and the principles for which it will later be cited were not disturbed.

aside, we are also of the opinion that when the reason for a rule ceases to exist, or when the reason for a general rule does not apply to a particular factual situation, the court should not blindly follow such rule for no more justifiable reason than that it is ancient and traditional. See also Holmes, The Path of the Law, 10 Harvard Law Review, 457, 469.

For these reasons we consider the rule requiring privity of contract to be inapplicable, and that we should determine the sufficiency of the petition by the application of ordinary rules of negligence.

It is clear that an obligation may be assumed by contract out of which may arise a duty to others than parties to the contract. Helm v. Inter-Insurance Exchange for Automobile Club of Missouri, 354 Mo. 935, 192 S.W.2d 417, 167 A.L.R. 238; Lowery v. Kansas City, 337 Mo. 47, 85 S.W.2d 104, 110; 38 A.L.R. 403, 487–505. That is, a party by entering into a contract may place himself in such a relation toward third persons as to impose upon him an obligation to act in such a way that the third persons will not be damaged. Wolfmeyer v. Otis Elevator Co., Mo., 262 S.W.2d 18. In Lambert v. Jones, 339 Mo. 677, 98 S.W.2d 752, 758, it was stated that where one under contract with another assumes responsibility for property or instrumentalities and agrees under his contract to do certain things in connection therewith which, if left undone, would likely injure third persons, "there seems to be no good reason why [he] should not be held liable to third persons injured thereby for his failure to do that which he agreed to do, which he assumed responsibility for, and which was reasonably necessary to be done for their protection." See also the Comment, Recovery for Negligent Interference with Prospective Economic Advantage, 12 Stanford Law Review 509. A basic principle is that "Most duties, imposed by the law of torts, arise out of circumstances and are based on 'foreseeability' or reasonable anticipation that harm or injury is a likely result of acts or omissions." Hull v. Gillioz, 344 Mo. 1227, 130 S.W.2d 623, 628.

Turning now to the facts of this case, as determined from the allegations of the petition, defendant had the contractual duty to certify, for purposes of payment by the owner to the contractor, the correct amount of work satisfactorily performed and the correct amount of materials furnished. The defendant negligently and incorrectly certified to the owner that more work had been performed, and that more materials had been delivered than in fact had been performed and delivered. As a result of this negligent certification, when the contractor later defaulted and the surety was required to complete the project, there was less money in the hands of the owner available to be used by the surety to pay for completing the project than there would have been if defendant had performed his contractual duties without negligence, and the surety had to make up the difference. In the exercise of ordinary care this result was easily foreseeable. In fact, the purpose of the inspection and certification by the architect was to prevent exactly what happened.

We have been referred to only one case, and we have found no other, which is closely parallel to the facts of this case. In State of Mississippi, for use of National Surety Corporation v. Malvaney, 221 Miss. 190, 72 So.2d 424, 43 A.L.R.2d 1212, the construction contract provided that a certain percentage of the contract price was to be retained until the work was satisfactorily completed. The architect authorized the payment of a portion of the funds to be retained without ascertaining that all bills for labor and materials had been paid. The contractor subsequently defaulted, and in completing the work the surety was required to expend the sum, and more, that had been improperly paid to the contractor from the funds which should have been retained until all bills had been paid. The court held that the architect

knew, or should have known, when he authorized the release of the money that the surety would be deprived of the protection thereof in the event of default on the part of the contractor, that the duties of the architect provided for in the contract included the duty of not approving payments in excess of the authorized amount, and that "This duty was owing both to the [owner] and the surety, for whose mutual benefit and protection the retainage funds were provided." It was then stated: "A contractual relation between the architect and the surety was not requisite to the existence of this duty. It arose out of the general contractual arrangements which contained mutually interdependent rights and obligations." The surety was permitted to recover against the architect on the basis of negligence in authorizing the payment to the contractor without determining that all labor and material bills had been paid.

Defendant admits that the Malvaney case is "relevant to the question" but he contends that it is inapplicable because (1) the plaintiff in that case "was the contracting surety who was known and intended to be a party to the transaction," and (2) the court relied on a Mississippi statute which, in effect, made the surety a participant in the construction contract, and the architect's actual or constructive knowledge of that law was held to impose a special duty on him to protect the position of the surety. We consider these to be no more than differences which do not distinguish that case from this. Plaintiff in this case stands in the position of the surety, and has no claim or right which could not be asserted by the surety. The surety was known, and the contract provisions pertaining to payments based on certificates of the architect were for the surety's benefit. In the Malvaney case the owner was a public school, and the statute referred to required a performance bond by a surety. The requirements of the statute as to what the bond was to provide are not materially different from what plaintiff alleges the bond in this case provided. The defendant

there was "charged with knowledge" of the requirements of the law, and for the purposes of this appeal we cannot assume that defendant did not know, or was not required to know, the terms of the contracts.

Defendant also asserts that his negligence was not the proximate cause of plaintiff's loss, but that the default of the contractor was an intervening cause. The purpose of the inspection and the certificates of the architect was to protect the owner and the surety against payment of money to the contractor for work not performed and materials not delivered in the event of default. No loss to the owner or to the surety could ever result if there had been no default. The occurrence of the incident for which the contract provisions were designed to guard against should not be considered to be an intervening cause.

"The determination whether in a specific case the defendant will be held liable to a third person not in privity is a matter of policy and involves the balancing of various factors, among which are the extent to which the transaction was intended to affect the plaintiff, the foreseeability of harm to him, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to defendant's conduct, and the policy of preventing future harm." Biakanja v. Irving, 49 Cal.2d 647, 320 P.2d 16, 65 A.L.R.2d 1358. Each and every one of the above elements are not absolutely necessary to authorize an action to be maintained, but we consider all to be satisfied in this case except we doubt that any "moral blame" can be leveled at defendant. When we consider that the other elements are present, and also consider that the usual reasons for limiting actions for the negligent performance of a contractual duty to those in privity of contract are absent, we conclude that the overall policy considerations

weighs heavily in favor of the right of plaintiff to maintain this action under the factual circumstances alleged in the petition.

The judgment is reversed and the cause remanded.

BARRETT and PRITCHARD, CC., concur.

PER CURIAM.

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

FINCH, P. J., and EAGER, J., concur.

DONNELLY, J., concurs in result.