SOUTHWESTERN SURETY INS. CO. v. MINNETONKA LUMBER CO. *et al.*

No. 4350.   Opinion Filed May 11, 1915.

Rehearing Denied June 1, 1915.

(148 Pac. 1038.)

PRINCIPAL AND SURETY—Building Contractor's Bond—Waiver of Condition—Discharge of Surety. In an action on a bond executed to secure the performance of a building contract containing a provision that "all payments shall be made upon written certificate of the architects, to the effect that such paybents have become due," where it appears that certain payments were made witout obtaining such certificates, but were not made before they became due, and were used in discharge of the contractor's obligations for labor and material that went into the building, and there was no fraud or collusion therein, held that, under the terms of the contract in question, such provision therein was intended for the benefit of the owner, who could waive it, without affecting the liability of the surety on such bond.

(Syllabus by Bleakmore, C.)

*Error from District Court, Oklahoma County;*

*W. R. Taylor, Judge.*

Action by the Minnetonka Lumber Company against W. T. Tate and others. Judgment for Tate on cross-petition against the Southwestern Surety Insurance Company, a corporation, and the Insurance Company brings error. Affirmed.

*Burwell, Crockett & Johnson,* for plaintiff in error.

*Wilson & Tomerlin* and *E. E. Buckholts,* for defendants in error.

BLEAKMORE, C. This action was commenced in the district court of Oklahoma county by the Minnetonka Lumber Company, as plaintiff, against W. T. Tate and the other defendants in error, as defendants, to enforce a materialman's lien. All the defendants therein, save Tate and L. G. Johnson, filed cross-petitions seeking the foreclosure of similar liens. The defendant Tate filed his cross-petition alleging, in substance, that he was the owner of a certain lot in Oklahoma City; that on the 12th day of May, 1911, he entered into a contract with the defendant Johnson whereby Johnson agreed to furnish the material and labor and to construct according to certain plans and specifications a two-story frame residence on said lot for the sum of $5,603.30; that to secure the performance of said contract by said Johnson according to its terms and conditions plaintiff in error executed and delivered to Tate its indemnity bond in the sum of $2,500; that Johnson breached the contract by failure to deliver the building free from liens, to his damage in a sum more than $2,000. Plaintiff in error answered by way of general denial, but admitted its corporate existence and the execution of the bond.

The case was tried to the court, resulting in judgment for Tate against plaintiff in error for the sum of $1,187.54. For con-

venience Tate will hereafter be referred to as plaintiff and plaintiff in error as defendant.

The court made the following among other findings:

"The court finds that in accordance with the terms and stipulations of said contract with the said L. G. Johnson the said W. T. Tate paid out the sum of $5,989.65. * * *

"The court further finds that the defendant and cross-petitioner W. T. Tate has paid out under his contract with the said L. G. Johnson the sum of $5,989.65, which, together with the liens hereinbefore named as $1,385.69, makes a total amount for which the said W. T. Tate and his property is chargeable of $7,375.34.

"The court further finds from the evidence that the defendant W. T. Tate is indebted to the said L. G. Johnson in the sum of $448 for the building of a barn for the said W. T. Tate, and that the said L. G. Johnson and his surety are entitled to credit for said amount, and that the amount remaining chargeable to the said L. G. Johnson and his surety, after deducting the amount due said L. G. Johnson, is $6,927.34.

"The court further finds that the said L. G. Johnson and his surety, the Southwestern Surety Insurance Company, are entitled to a further credit against the said W. T. Tate as follows: The contract price of the building contract, $5,603.30, and extras pursuant to subsequent agreement approved by the surety, $136.50, or a total credit of $5,739.80, and after deducting which last amount from the said $6,927.34 leaves the sum of $1,187.54 chargeable against the said L. G. Johnson and his surety, the Southwestern Surety Insurance Company."

The contract for the building of the residence, to secure the performance of which the bond of defendant was executed, was entered into on May 12th; the bond was given the following day. On May 16th plaintiff entered into another and separate agreement with the contractor Johnson for the construction of a barn on the same lot at the contract price of $435. The barn was completed by the contractor, but no separate account was kept of the labor or materials used in its construction.

The contract for the building of the residence contained the following provisions:

It is hereby mutually agreed between the parties hereto that the sum to be paid by the owner to the contractor for said work and material shall be ($5,603.30) five thousand six hundred and three and 30/100 dollars, subject to additions and deductions as hereinbefore provided, and that such sums shall be paid in current funds by the owner to the contractor in installments, as follows: The owner shall pay the contractor enough money from time to time to pay the labor bills, and all bills for material, and sub-contracts shall be paid directly by the owner to the subcontractor and to the party furnishing the material, and all moneys so paid shall be deducted from the contract price, and any balance remaining shall be paid to the contractor after the work is completed according to contract. The final payment shall be made within fifteen days after the contract is fulfilled. All payments shall be made upon written certificates of the architects to the effect that such payments have become due. If at any time there shall be evidence of any lien or claim for which, if established, the owner of the said premises might become liable, and which is chargeable to the contractor, the owner shall have the right to retain out of any payment then due or thereafter to become due an amount sufficient to completely indemnify him against such lien or claim. Should there prove to be any such claim after all payments are made, the contractor shall refund to the owner all moneys that the latter may be compelled to pay in discharging any lien on said premises made obligatory in consequence of the contractor's default."

The evidence discloses that certain payments, approximately $1,000, were made by the plaintiff to the contractor without certificate of the architect, and certain other payments were made by the architect himself with checks signed by the plaintiff in blank and filled in by the architect, and still other payments were made, on orders of the architect, by representative of a loan company from which plaintiff had procured a loan on the premises.

The defendant assigned as error:

(1) "The court erred in overruling demurrer of plaintiff in

error to the evidence introduced on behalf of defendant in error Tate."

(2) "The court erred in overruling motion of plaintiff in error for new trial."

With reference to the first assignment, defendant in its brief states:

"There are two grounds upon which we particularly rely to sustain our position that the evidence introduced on behalf of defendant in error Tate was not sufficient for the court to find in his favor, and we will consider them in their order: Impossible to determine amount of material and labor which went into the house. * * * Payments were made in violation of the contract."

The contract for the barn was an independent contract, made at a time different from that for the dwelling. The barn was completed, and there is nothing in the evidence to indicate that the contractor failed to complete it within the contract price.

Defendant argues in its brief:

"The defendant in error Tate could easily have kept the barn and house accounts separate, and his failure to do so was negligence, and the plaintiff in error, not having had anything to do with it, certainly should not be punished because of such negligence."

The case of *Johnson v. Simmons,* 123 Ala. 564, 26 South. 650, is squarely in point. We quote from the syllabus as follows:

"Where lumber was furnished by plaintiff to a contractor, who was at the time building defendant's house, and two others, the evidence of plaintiff that he thought about $210 worth of lumber, corresponding to that sold by him to the contractor, was used in defendant's house, does not justify a finding that $210 worth of lumber was so used."

In the case cited the plaintiffs, lumber dealers, sold materials to the contractor who was constructing houses for three different owners at the same time, and sought to enforce a lien on one of

Form 23

them. They kept no account of the material used in the house in question. The court, in reversing the judgment in favor of plaintiffs, said:

"No man knows or can say what of the lumber in specie or in value went into this house or into the others."

In that case the lumber dealer should have kept such an account. In the instant case there was no duty resting upon the plaintiff, by virtue of the terms of the contract or otherwise, to keep such account. The only obligation on his part was to pay the contract price when the barn was completed. This was provided for by the judgment of the court, and the rights of defendant were, and could have been, in no way prejudiced thereby. They received credit for the full contract price.

Were the payments complained of made in violation of the terms of the building contract? We think not. What substantial right of the defendant, as surety, was impinged by such payments? It cannot ever be inferred from the evidence that the payments so made were not used in the discharge of the contractor's obligations for labor and material that went into the dwelling; nor is it contended that such payments were made before they became due nor is there any claim of fraud or collusion.

It will be observed that in the building contract under consideration there is no provision for the retention by the owner of any part of the contract price until after the completion of the work; but, on the contrary, it is provided that:

"The owner shall pay the contractor enough money from time to time to pay the labor bills and all bills for material * * * and all moneys so paid shall be deducted from the contract price, and any balance remaining shall be paid to the contractor after the work is completed according to contract. The final payment shall be made within fifteen days after the contract is fulfilled." "All payments shall be made upon written certificates of the architects, to the effect that such payments have become due."

The trial court found:

"That in accordance with the terms and stipulations of said contract with the said L. G. Johnson the said W. T. Tate paid out the sum of $5,989.65."

"This finding of the court is supported by the evidence, and is fairly deducible from a reasonable construction of the contract itself. The language, "All payments shall be made upon written certificates of the architects to the effect that such payments have become due," when considered in connection with the other provisions above quoted, may fairly be said to express the intention of the parties to be that the owner shall from time to time pay to the contractor money sufficient to meet the bills for labor and materials, but that he shall not be required to do so until the architect shall have certified in writing that such payments have become due. Clearly, under the terms of the contract in question, such provision was intended for the benefit or protection of the owner, and, under the circumstances of this case, he could waive it and such waiver could in no way affect the liability of defendant as surety on the bond in suit.

From an examination of the entire record we are of opinion, that there has been no miscarriage of justice, or violation of the substantial rights of defendant.

The judgment of the trial court should therefore be affirmed.

By the Court: It is so ordered.