# SOUTHERN REAL ESTATE & FINANCIAL COMPANY, Appellant, v. BANKERS SURETY COMPANY.

In Banc, December 19, 1918.

1. **INSTRUCTION: No Evidence: Builder's Contract: Over-Payment.** If there is no evidence upon which to base an instruction on the measure of damages, it should be refused. Where the contract was that the plaintiff was to pay a building contractor "each month ninety per cent of the work in place during the preceding month," and the uncontradicted evidence is that the payments made by plaintiff did not exceed ninety per cent of the value of the work and material in place at the time the contractor abandoned the work, an instruction asked by the defendant, who is sued on the contractor's indemnifying bond, predicated on the assumption that plaintiff paid more than ninety per cent, does not correctly state the measure of damages, and should be refused.

2. ———: **Measure of Damages: Builder's Contract: Overpayment.** Where the contract provided that the agreed price for constructing a theatre-and-hotel power plant was "to be paid in installments on the 15th day of each month of ninety per cent of the work in place during the preceding month, according to the certificate of the architect," and the contractor entered into bond to keep the owner harmless and indemnified against every claim and lien against the building and to repay to the owner all money he might pay to others on account of the failure of the contractor to pay said claims or to complete the building, the owner, in a suit on the bond, is entitled to recover any amount paid by him for the completed building, in excess of the contract price, subject to a credit to the surety for any amount paid to the contractor in excess of ninety per cent of the value of the work and material in place at the time the contractor abandoned the work, as estimated monthly by the architect; the instruction cannot limit the amount which the owner can recover to ten per cent of the whole cost of the completed building as finally ascertained.

3. **VERDICT: Mistakes or Prejudice of Jury; One Half Proven Damages.** Where the plaintiff, by the uncontradicted evidence, clearly established that, if he was entitled to recover at all, he was, under the breached contract, entitled to recover $11,064.47, and the jury, either because they made a mistake in calculating the items or disregarded the correct instructions given, returned their verdict for only about one-half the amount, the court, upon plaintiff's motion, should grant a new trial.

Appeal from St. Louis City Circuit Court—*Hon. Charles B. Davis,* Judge.

REVERSED AND REMANDED.

*Reynolds & Harlan* and *Lydia Lee* for appellant.

(1) The instructions of the court prescribed the rule for measuring the damages in this cause, by which the jury must be guided in arriving at its verdict. The award not being warranted by the rule therein laid down is such evidence of prejudice or mistake as renders it the duty of the court to set aside the verdict. R. S. 1909, sec. 2022; Baylies on New Trials, p. 505; Morris v. Railroad, 136 Mo. App. 393; Fischer v. St. Louis, 189 Mo. 579; Watson v. Harmon, 85 Mo. 443; Fury v. Merriman, 45 Mo. 500; Pritchard v. Hewitt, 91 Mo. 551; Edwards v. Railway, 82 Mo. App. 485. (2) It is conceded that defendant is released only to the extent to which it is injured by over-payments made to the contractor. Just what constitutes an "overpayment" is the controversy arising upon the instructions on the question of the measure of damages. The correct rule is that stated by the court's instruction given at plaintiff's request, namely, that plaintiff is entitled to recover any amount paid by it for this work in excess of the contract price, subject to credit to the defendant for any amount paid to the contractor in excess of ninety per cent of the value of the work and materials in place in the structure at the time of its abandonment by the contractor. Howard County v. Baker, 119 Mo. 397; Milavetz v. Oberg, 164 N. W. 910; Crudup v. Portland Cement Co., 156 Pac. 899; National Surety Co. v. Haley, 159 Pac. 292; Gorton v. Freeman, 152 Pac. 127; School District v. U. S. F. & G. Co., 152 Pac. 668; Southwestern Surety Co. v. Lumber Co., 149 Pac. 1038; British Amer. Tob. Co. v. Surety Co., 164 N. Y. Supp. 406; Hastings Land Imp. Co. v. Empire State Surety Co., 156 App. Div 258; Welsh v. Warren,

159 S. W. 106. (3) The burden of proving such injury as may have been sustained by it, by reason of the alleged over-payments, is on the defendant surety. Welsh v. Warren, 159 S. W. 106; Lackland v. Renshaw, 256 Mo. 133.

*Jeffries & Corum* for respondent.

(1) The instruction should have declared the law to be that the defendant was entitled to a credit for any amount the owner paid to the contractor in excess of ninety per cent of the value of work and materials in place with reference to the contract price. In other words, that it was the duty of the architect to ascertain the value of work and materials in place in order to determine what proportion of the contract had been performed, and the owner was entitled to pay the contractor only ninety per cent of the contract price with relation to the proportion of the contract completed and performed. Southern Real Estate & Financial Co. v. Bankers Surety Co., 184 S. W. 1030; Fidelity & Deposit Co. v. Agnew, 152 Fed. 959; O'Neill v. Title Guaranty & Trust Co., 191 Fed. 570; Hawkins v. Burrell, 69 App. Div. (N. Y.) 464, 74 N. Y. Supp. 1003; National Surety Co. v. Long, 79 Ark. 573; Neilson v. Title Guaranty & Surety Co., 159 Pac. 1151. (2) The effect of the instruction was to declare to the jury that plaintiff was entitled to recover damages, even though the total cost to plaintiff was less than the contract price. Plaintiff could not have suffered damages unless the abandonment of the work by the contractor caused the plaintiff to expend more than the contract price. The instruction either misdirected the jury, or was so directed as to necessarily confuse them in arriving at a correct solution of the issues. Knapp v. Hanley, 153 Mo. App. 169. (3) The court erred in refusing the instruction requested by defendant, for the reason that said instruction correctly declared the law as to plaintiff's measure of damages. Southern Real Estate &

Financial Co. v. Bankers Surety Co., 184 S. W. 1030; Fidelity & Deposit Co. v. Agnew, 152 Fed. 959; O'Neill v. Title Guaranty & Trust Co., 191 Fed. 570; Hawkins v. Burrell, 69 App. Div. (N. Y.) 464, 74 N. Y. Supp. 1003; National Surety Co. v. Long, 79 Ark. 573; Neilson v. Title Guaranty & Surety Co., 159 Pac. 1151. (4) The case had been tried once and had been appealed to this court and this court rendered an opinion holding that the owner was entitled to pay the contractor only ninety per cent of the value of work and materials in place with reference to the entire contract price. Without reference to whether this doctrine should be permitted to stand as the law of the State, it is plainly the law of this case. Armour v. Frey, 253 Mo. 465; Ward v. Haren, 183 Mo. App. 569; Bagnell Tie & Timber Co. v. M., K. & T., 250 Mo. 514; Scott v. Parkview Realty & Imp. Co., 255 Mo. 76; Butz v. Murch Bros. Contr. Co., 137 Mo. App. 222; Vancleve v. St. Louis, M. & S. E. R. Co., 137 Mo· App. 332; Roth Tool Co. v. Champ Spring Co., 146 Mo. App. 1; State ex rel. Shipman v. Allen, 144 Mo. App. 234. (5) The judgment cannot be remanded with direction to enter judgment for the full amount claimed by plaintiff. State v. Frederici, 269 Mo. 695; Johnson v. Grayson, 230 Mo. 394; Tierney v. United Railways Co., 185 Mo. App. 724; McDonald v. Mossman, 181 Mo. App. 476.

WOODSON, J.—This is the second time this case has reached this court. The opinion written on the former appeal is reported in the 184 S. W. 1030, which reversed and remanded the cause for another trial.

The facts are practically undisputed, but the contest centers around two legal propositions, which will be presently stated.

When the mandate of this court reached the circuit court the plaintiff filed an amended petition, setting up the building contract entered into between the plaintiff and the E. H. Abadie Company, a contractor, whereby the latter undertook "to provide all of the

materials and perform all the work for the steam heating, ventilating and power plant for a hotel and theatre building being erected on the northeast corner of Seventh and Market Streets, in the city of St. Louis," for the sum of $60,000, "to be paid in installments on the 15th day of each month of ninety per cent of the work in place during the preceding month, according to the certificate of the architect, the final payment to be made thirty days after the completion of the work included in the contract."

Counsel for the plaintiff correctly states the case substantially in the following language:

"The amended petition plead the bond entered into between the E. H. Abadie Company, as principal, and defendant, as surety, and the plaintiff, as obligee, wherein defendant agreed to keep the plaintiff 'harmless and indemnified from and against all and every claim, demand, judgments, liens and mechanic's liens, costs and fees of every description, incurred in suits or otherwise, that might be had against it or against the building to be erected under said contract, including alterations, and to repay to the said plaintiff all sums of money which it might pay to other persons on account of work and labor done, or materials furnished on or for said buildings, by reason of the failure on the part of the said E. H. Abadie Company to pay to said plaintiff all damages it might sustain and all forfeitures to which it might be entitled by reason of the non-performance or mal-performance on the part of said E. H. Abadie Company of any of the covenants, conditions, stipulations and agreements of said contract including such alterations and additions.' The penalty of the bond is $15,000. Said bond further provided that the parties might by agreement make alterations and additions to said contract, provided the additional cost thereof did not exceed $5000. Thereafter an amendment to the bond was agreed upon by the parties whereby alterations and additions to said contract might be

made to the amount of $15,000 without any other or further consent of the surety.

"The amended petition further plead that additions were made to said contract at a cost of $8963.98, the partial performance of the contract and the abandonment thereof by the contractor, after payment by plaintiff to said contractor of $62,502.50, upon certificates of the architect, and that said amount constituted approximately ninety per cent of the value of the work and materials in place on said building to said time; that thereafter plaintiff paid on account of materials furnished on the order of the contractor and incorporated in the building, to various persons and corporations, the sum of $2432.50; that plaintiff paid on account of mechanics'-lien judgments against said building on account of material furnished to said contractor, the aggregate sum of $9468.21; that the cost to plaintiff to complete said contract was $5607.24; a total cost to plaintiff, over and above the contract price of $68,962.98, of $11,064.47, for which amount with interest plaintiff prayed judgment.

"Defendant answered, admitting the execution of the contract and bond and the terms thereof, and as an affirmative defense, plead a violation of the provision of the contract in that plaintiff overpaid the contractor. Other affirmative defenses were set out in said answer, but were apparently abandoned by defendant at the trial, as no evidence was offered by defendant, and no instructions were asked save on the question of overpayment to the contractor.

"The defendant offered no evidence at the trial, and that introduced by plaintiff was to the effect that the contract was breached by the contractor; that the money paid the contractor before the breach was ninety per cent or less of the value of the work in place; that all the money paid to others, including that expended to complete the contract, was paid for materials which actually went into the building in the performance of the contract.

"Frederick C. Bonsack testified that he was the architect designated by the contract of the parties, the performance of which the bond in suit was executed to secure; that his particular duty was to see that the work was done according to plans and specifications; that in pursuance of this duty, he was on the building almost every day and had Samuel C. Black, his superintendent, representing him there all of the time. Mr. Bonsack testified to the additions and alterations made to the contract commonly known as 'extras,' being plaintiff's Exhibits E-F, Exhibits G-H, Exhibits I-J, Exhibits K-L, Exhibits M-N, Exhibits O-P. The aggregate amount of these 'extras' was the $8963.98, constituting the additions to the original contract.

"He further testified as to his method of determining the amount of money to be paid to the contractor that on each month the contractor would submit a statement to his office of the amount of work he did during the month past; that he (Bonsack) had his superintendent and the representative of the owner on the work to check up this statement, after which he checked it himself and determined to what extent it was correct; that in arriving at this amount he took into consideration the amount of work that had been done according to the best of his ability and that he allowed him ninety per cent of the amount thereof.

"In connection with the testimony of the architect, Bonsack, as to his manner of making this computation, plaintiff offered in evidence his certificates identified by him as Plaintiff's Exhibits Q, R, S, T, U, V, W, X, Z, AA, BB, respectively, stating that each of them represented ninety per cent or less of the work in place at the time. Each of these certificates had appended thereto an acknowledgment of receipt of the money called for therein by the contractor, said receipts being admitted by defendant to be genuine, showing payment to said contractor on account of said contract of the sum of $62,502.50.

"He further identified the orders on the owner to pay various amounts to materialmen, same being Plaintiff's Exhibits CC, DD, and EE, and stated that these amounts were paid and that the material they represented went into the building under the Abadie contract.

"On cross-examination he testified that the incompleted portion of the contract would not bear the same ratio to the entire work as the $5607.24 which it cost to complete would bear to the entire contract price, because it would cost more labor to take hold of a job in that condition and finish it than it would have cost the original contractor to complete it.

"Samuel C. Black confirmed Bonsack's statements as to his employment in connection with the Abadie contract; that the money paid direct to the materialmen after Abadie abandoned the contract covered specified articles which went into the building. He likewise confirmed Bonsack's statement that both he and Bonsack checked over Abadie's statements and determined from an examination of the work itself how much was due, and that the amounts allowed were based on estimates of ninety per cent of the work in place, and that the $62,500 paid Abadie represented ninety per cent of the actual work and materials in place.

"He further testified to the amount it cost to complete the contract—some $5600, he said; that he participated in buying the materials and employing the labor to complete the contract, and that this amount was the fair and reasonable cost of the work, though it was probably considerably more than it would have cost the contractor, if he had finished it without allowing his work to lax; that the contractor had allowed his work 'to lax.'

"Bonsack, on further examination, testified that the work was done during the panic of 1907, money was hard to get and the contractor was not overpaid at any time; that at the time the contractor quit, the work was virtually complete, minor details only to be finished up, and that the $62,500 paid to Abadie repre-

sented ninety per cent or less of the work and materials in place.

"The deposition of Edward A. Richards was offered, wherein he testified that he was a mechanical engineer and was employed by the plaintiff to superintend the erection of the building in question; that Mr. Black, acting for Mr. Bonsack, the architect, assisted him in overseeing the Abadie contract; that after Abadie abandoned the contract the work was completed under the direction of himself and Mr. Black according to the original plans and specifications; that he and Black employed the labor at union wages, and bought the material at the lowest price obtainable, taking competitive bids therefor; that he and Black both kept records of the moneys expended, which records were exactly alike, and that he had recently examined Black's book and he identified the item constituting the architect's certificate of the cost of completion as the amounts actually expended in the work, stating in each instance what the article so purchased was. His own record had been destroyed.

"The payment by plaintiff of mechanics'-lien judgments, due to the failure of the contractor to pay for labor and material, was shown, same with interest and costs totaling $9002.06.

"Joseph E. Martin, secretary of the plaintiff company, testified to the payment of the mechanics'-lien judgments and of an attorney's fee for $460 for the defense thereof.

"Both parties offered instructions to the jury on the measure of damages. The instruction offered by plaintiff and given by the court is as follows:

" 'The court instructs the jury that if you find in favor of plaintiff you will assess its damages in the manner following:

" '1. If you find from the evidence that the E. H. Abadie Company abandoned its contract before completing the work it undertook to perform, and if you further find from the evidence that thereafter the work

was completed by plaintiff, then you must find and determine from the evidence the reasonable cost necessarily incurred by plaintiff to complete the heating and ventilating plant covered in the contract between plaintiff and the said E. H. Abadie Company and the amendments thereto.

" '2. If you further find from the evidence that the E. H. Abadie Company purchased materials or incurred indebtedness for labor, for which materials and labor the said Abadie Company did not pay, and if you further find from the evidence that said materials were used in and became a part of the said heating and ventilating system contracted to be erected by said Abadie Company, and that said labor was employed on said work, then you must find from the evidence the amount of the claims thus incurred by the said E. H. Abadie Company and not paid by it, whether said claims were reduced to judgment in the form of a mechanic's. lien or not.

" '3. If you find from the evidence that there were claims unpaid by said Abadie Company, and if you further find from the evidence that some of said claims were reduced to judgment in the form of mechanics' liens, then you will add to the principal sum of such judgments so found from the evidence the court costs incurred in each case and allow the plaintiff interest on said judgment and costs from the date of entry of the judgment in each case at the rate of six per cent per annum up to this date. You will also allow the plaintiff the reasonable amount of any attorney's fees paid by it to its counsel in connection with said mechanics' liens.

" '4. If you find from the evidence that the contractor, the E. H. Abadie Company, abandoned its work before the completion thereof, and if you further find from the evidence that the work was completed by the plaintiff, then you must find from the evidence the total cost of the heating and ventilating plant contracted for to plaintiff, which cost you will determine

by adding to the amount of money you find from the evidence that the plaintiff paid the E. H. Abadie Company before it abandoned the work the reasonable cost to plaintiff to complete the work, as found by you, pursuant to instruction one. If the total cost thus ascertained to plaintiff was less than the contract price, with the extras authorized thereunder added, then you will credit the defendant with the difference between the actual cost to plaintiff and said contract price and credit the amount thus found in favor of the defendant and deduct same from any amounts you may find pursuant to this instruction in favor of the plaintiff.

"  '5.  If you find from the evidence that the contractor abandoned the work before the completion of his contract, and if you further find from the evidence that plaintiff made payments to the said contractor after the work progressed and before it abandoned its contract, then you must determine from the evidence whether the amount so paid by the plaintiff to the contractor was in excess of ninety per cent of the value of the work and materials in place in the structure at the time of its abandonment by the contractor, and if you find from the evidence that the plaintiff did pay to the contractor more than ninety per cent of the value of work and materials in place as above stated, then you will determine from the evidence the amount of money paid by the plaintiff to said contractor in excess of said ninety per cent and the amount thus found must also be credited to the defendant and deducted from any amount that you find due the plaintiff, pursuant to the previous paragraphs of this instruction.

"  'The court further instructs you that in no event can you find in favor of the plaintiff in the principal sum of more than $11,045.47, the amount sued for in this case, and interest on the mechanics' liens from the date of the payments thereof to this date.'

"The defendant requested the following instruction, which was refused by the court:

" 'The court instructs the jury that the liability of the defendant herein, if you find there is any liability, is the difference between the total amount of money expended by plaintiff on the contract referred to in the evidence and $68,807.25, being the gross contract price, which amount, however, is subject to a credit of any payment, if any, made by the owner to the contractor in excess of ninety per cent of the value of the work and materials in place at the time of the abandonment of the contract by the Abadie Company with reference to the entire contract price, which means that if ninety per cent of the contract had been performed at the time the Abadie Company abandoned the work, then the said amount, being the difference between the gross contract price and the total amount of money expended by the plaintiff on the contract, is subject to a credit represented by any amount, if any, the owner paid to the contractor, or on his account, prior to his abandonment of the work in excess of ninety per cent of the contract price, and that said amount, less said credit, is the maximum amount of defendant's liability.' "

I. Counsel for the plaintiff insist that since the instruction given by the court at its request correctly declared the law as to the measure of damages it was entitled to recover in this case, and since the uncontradicted evidence showed that it was entitled to recovery of $11,064.47 and interest, and since the verdict returned by the jury was for only $7687.50, the jury arbitrarily disregarded the instruction given by the court, or through prejudice or by mistake found for plaintiff in a sum which was only about one-half of what was actually due it.

This insistence assumes the correctness of the instruction given by the court in behalf of the plaintiff as to the measure of damages, which is denied by counsel for defendants, and the counter contention is

Measure of Damages.

made that the instruction asked by them correctly declared the rule as to the measure of damages, and that the court erred in refusing to give it.

We will dispose of these cross-insistences in the inverse order in which they are stated. Regarding the latter: The court properly refused the defendant's instruction for one reason, if for none other, namely: This instruction is predicated upon the contention that the evidence tended to show the plaintiff paid the contractor, prior to the time it abandoned the work, more than ninety per cent of the work and materials then in place in said plant, and was therefore a violation of the building contract made between them, which it is contended released the defendant, the surety, from all injury it received by reason of said over-payments. But counsel are mistaken in that contention, for there is no evidence upon which to base it. The uncontradicted evidence is to the effect that the payments made by plaintiff to the contractor, prior to its abandonment of the work, did not exceed ninety per cent of the work and materials then in place. In the absence of such evidence, the action of the court in refusing the instruction was clearly correct.

Attending the second insistence: Independent of what has just been said, we are clearly of the opinion that the court correctly declared the measure of damages in the instruction given by it on behalf of the plaintiff, namely, that the plaintiff was entitled to recover any amount paid by it for the completed plant, in excess of the contract price, subject to a credit to the defendant for any amount paid the contractor in excess of ninety per cent of the value of the work and material in place in the plant at the time of its abandonment by the contractor.

This identical question came before this court in the case of Howard County v. Baker, 119 Mo. 397, and on page 406 the court, in speaking through Gantt, P. J., we said:

"It is next insisted that the sureties are released from their undertaking in the bond, because they claim that the county court overpaid the contractor during the progress of the work; that the provisions relative to the payments were for the benefit of the sureties, and the county court voluntarily abandoned security it should have retained. The stipulation of the contract on this subject was, that the court 'should pay eighty-five per cent *on the amount of material furnished on the grounds and work done on the buildings,* on the first of each month, *as the work progressed,* and this per cent should be ascertained, upon the estimate of the superintendent, certified by the architects and indorsed by the court.'

"The appellants seek now to interpolate a new provision or element in the estimate, namely, that the court shoud not at any time, have paid more than eighty-five per cent of the amount that the work done and material furnished *bore to the whole cost of the building.* But this would have been an unauthorized change in the contract.

"It might have been that the contractor could not build the house for the amount of his contract, but it would not justify the court in violating its agreement with him to pay him eighty-five  per cent of the materials furnished and work done each month.

"The contract is plain and unambiguous, and there is no room to place upon it the construction contended for.  Had the county court placed such a construction on it, pending the building, it might have offered the contractor a very convenient excuse to abandon his contract, as he subsequently did, without it.

"The payments were made on the estimates of the superintendent.  In the absence of fraud, of which there is no evidence  whatever, his certificate was conclusive on the parties. [Williams v. Railroad, 112 Mo. 463.]  The referee found as a fact the payments were made each month as the contract required and his findings have the effect of a special verdict. [Wiggins

Ferry Co. v. Railroad, 73 Mo. 389; Vogt v. Butler, 105 Mo. 479.]''

The same rule is announced in the following cases: Milavetz v. Oberg, 164 N. W. (Minn.) 910; Crudup v. Portland Cement Co., 156 Pac. (Okla.) 899; National Surety Co. v. Haley, 159 Pac. (Okla.) 292; Gorton v. Freeman, 152 Pac. (Okla.) 127; British-Amer. Tob. Co. v. U. S. F. & G. Co., 164 N. Y. S. 406; Hastings Land Imp. Co. v. Empire State Security Co., 156 App. Div. (N. Y.) 258; Welsh v. Warren, 159 S. W. (Texas) 106; Southwestern Surety Co. v. Lumber Co., 148 Pac. 1038; School District v. U. S. F. & G. Co., 152 Pac. 668.

There are some expressions contained in the opinion of the court delivered upon the former appeal, which appear to be inconsistent with the views here expressed, but after a careful reexamination of the authorities we are of the opinion that they should not be adhered to, and they are overruled.

We, therefore, rule both of these insistences against the defendant.

II. Returning to the question regarding the amount of the verdict. The uncontradicted evidence shows that the contract price of the structure was $68,962.98; that the plaintiff paid the contractor $62,502.50, upon the certificates of the architect, prior to his abandonment of the work; that thereafter he paid on account of materials furnished on the order of the contractor and incorporated in the building to various persons the sum of $2432.50; that he paid on account of mechanics' lien judgments against said plant on account of materials furnished to the contractor, aggregating $9468.21 and that he paid $6607.24 in addition, to complete said plant after the contractor abandoned the work, aggregating something over $80,000 with attorney fees, etc., to be added, making the total cost to plaintiff over and above the contract price of $68,962.98 of $11,064.47; but the verdict of the jury was for only

$7687.50, or about one-half of the amount with interest the evidence showed was due the plaintiff.

In the light of Section 2022, Revised Statutes 1909, and the adjudications of this and other states upon this question, I am unable to see how we can permit this verdict to stand. Said section of the statute, in so far as is here material, reads as follows: ''In every case where there has been . . . a mistake by the jury, or a finding contrary to the direction of the court . . . the court . . . shall, on motion of the proper party, grant a new trial,'' etc.

Evidently the jury, under the uncontradicted evidence in this case, either made a mistake in figuring up the amount of the verdict or else it disregarded the instruction of the court, which told them that if they found for plaintiff, then they would find for it in a sum equalling the aggregate of the various amounts before mentioned, that is, of course, if they found that those amounts were correct; and it is difficult to see how they could have found otherwise under the undisputed evidence in this case, especially in the light of the fact that upon the same evidence they found the merits of the case for plaintiff and about one-half of the sum that evidence showed was actually due plaintiff. In discussing a similar question in the case of Fairgrieve v. Moberly, 29 Mo. App. 141, l. c. 152, where the uncontradicted evidence showed the plaintiff was seriously and permanently injured, and assessed her damages at one dollar, PHILIPS, P. J., said.

''While it is to be conceded to defendant that its evidence tended to show that the injuries were perhaps less serious and permanent than shown by plaintiff's evidence, yet it were trifling with obvious facts, almost incontrovertible, to say that her injury was not painful and serious. A dollar compensation for such an injury strikes the mind as monstrous. Such verdicts by juries are justly to be regarded as public misfortunes, as they tend, in large measure, to strike down popular respect for the jury system. No broader highway can be

opened to expose it to the full view of public contempt than such awards as they made in this case. The remedy for the increasing evil rests mainly with the trial courts in awarding a *venire de novo,* after publicly rebuking the jury for such an abortion of justice."

In the case of Morris v. Mo. Pac. Ry. Co., 136 Mo. App. 393, JOHNSON, J., in discussing this same question, on page 397, clearly and forcefully stated the law in the following language:

"The question of law for our determination is whether the trial court possessed authority to exercise such discretion. The rule thus stated by the Supreme Court in Hoepper v. Hotel Co., 142 Mo. l. c. 387, has repeatedly received recognition: 'The presumption is always in favor of the correctness of the rulings of the circuit court. It has committed to it much discretion in the matter of granting new trials and this court should not interfere unless its discretion has clearly been abused. It is therefore uniformly held that an appellate court will not interfere with the discretion of the circuit court in granting a new trial on the ground that the verdict is against the weight of the evidence. The proceedings are all in the presence of the court and it can better judge of the fairness of the trial than the appellate court which has before it the cold record only.'

"An exception to this rule has been found in actions *ex delicto* where the damages cannot be measured by any accurate rule and are not susceptible of direct proof. Speaking of such cases, we said in Edwards v. Railway, 82 Mo. App. l. c. 485: 'They admit of no other test than the intelligence of the jury, governed by a sense of justice. To the jury, therefore, as a favorite and almost sacred tribunal, is committed, by unanimous consent, the exclusive task of examining the facts and circumstances, and valuing the injury, and awarding the compensation in damages. The law that confers upon them this power and exacts of them the performance of this solemn trust favors the presumption

that they are actuated by pure motives, and it is not until the result of the deliberation appears in form calculated to shock the understanding and impress no dubious conviction of their prejudice and passion that courts have found themselves compelled to interpose.'

"The exception applies to actions for personal wrongs such as personal injuries, slander, malicious prosecution and the like. But where the reason for the exception does not obtain the general rule applies. It is immaterial whether the action be *ex contractu* or *ex delicto*. If the damages may be measured by a definite rule and under that rule may be ascertained with a fair degree of certainty it not only is the right but the duty of the trial judge to supervise the verdict and to set it aside when satisfied that it is against the clear weight of the evidence. In Bayliss on New Trials and Appeals, page 505, the author says: 'Where the law itself prescribes the rule of damages to which alone the plaintiff is entitled if he recover, a disregard of the law, and an award of a sum not warranted by the rule, is such evidence of passion, or prejudice, or more frequently, of mistake or misapprehension, as will render it the duty of the court to set aside the verdict.'

"In Watson v. Harmon, 85 Mo. l. c. 447, the Supreme Court, in recognizing the exception to the general rule, observed: 'But in cases of breach of contract and *injury to property* which have fixed standards of value, if there appears glaring deficiency in the verdict, justice demands a reversion.' Very clear and to the point is what was said by the Court of Appeals in the following excerpts from the opinion in McDonald v. Walter, 40 N. Y. 551: 'Nevertheless, it would be strange, if true, that no instance should occur in which, through a misapplication of the law to the facts which they find proved, or through prejudice or passion, or mistake, injustice is done, which it became the duty of the court to correct. While the general rule should be preserved, it would not be safe to assert the uncontrollable supremacy of the jury. Both in Eng-

land and in this country, therefore, the court has always exercised the power of reviewing the evidence on a case made for the purpose, and of granting a new trial, where upon a cool and deliberate examination the ends of justice seemed to require it. And this is always the plain duty of the court where the verdict is palpably against the law applied to the facts found. It is upon these principles that verdicts for an excessive and extravagant amount of damages are set aside; and where the law itself prescribes the rule of damages to which alone the plaintiff is entitled, if he recover, a disregard of the law, and an award of a sum not warranted by the rule, is such evidence of passion, prejudice, or more frequently of mistake, or misapprehension, that the verdict of the jury ought not and will not be permitted to stand. It would be a discredit to the administration of justice if this were not so. A verdict for a grossly inadequate amount stands upon no higher ground in legal principle, nor in the rules of law or justice, than a verdict for an excessive or extravagant amount. It is doubtless true that instances of the former occur less frequently because it is less frequently possible to make it clearly appear that the jury have grossly erred. But when the case does plainly show such a result, justice as plainly forbids that the plaintiff should be denied what is his due, as that the defendant should pay what he ought not to be charged. The power of the court to award a new trial when dissatisfied with the verdict, on this ground, is I think not open to question, and whether because the verdict is too large or too small, the principle is precisely the same. And in practice it has been customary heretofore to grant a new trial in either case.' "

After discussing the effect of the evidence in that case Judge JOHNSON proceeded and held that the court, in granting a new trial on that ground, acted within the scope of its duty.

In the case of Fischer v. City of St. Louis, 189 Mo. 567, the plaintiff stumbled over an obstruction on the

sidewalk, fell, broke and dislocated her ankle, from which she was confined to her bed for several months and suffered pains and distress naturally incident to such injuries; at the trial the jury found the facts for the plaintiff and assessed her damages at one dollar. This court in that case, in discussing this question through LAMM, J., on page 578, said:

"But it is stoutly contended by respondent that on all the facts of the case the jury should have found for respondent and that a one-dollar verdict in substance and effect amounts to that, merely taking the peculiar form it did out of regard for appellant on the question of costs.

" 'Raking in the dead ashes of antiquated cases,' to borrow the animated language of Chancellor KENT in discussing the earlier cases pertaining to the rule in Shelley's case, it may be found that a notion once prevailed that in an action founded in damages sounding in tort, the court might set aside a verdict excessively great as indicating passion, prejudice or misconduct on the part of the jury, but would not meddle with a verdict immoderately small. This doctrine was illogical and, being based on no substantial reason, is exploded. The true rule seems to be that a court with great hesitation will invade the province of a jury and interfere with a verdict for damages sounding in tort for personal injuries, crim. con., seduction, slander, libel and other cases, especially where malice is an element and smart money or exemplary damages are allowed. But judges have never renounced their right, as an element in the administration of the law, to set aside a verdict, either excessive in bigness or ridiculous in littleness, where the result reached shocks the understanding and cannot be fairly justified on any hypothesis except misconduct or prejudice or willful disregard of instructions. In arriving at a conclusion, however, the presumption is in favor of the good conduct of the jury and, therefore, if on the whole record the case preponderates in favor of the defendant, or is evenly balanced in the scales,

or where, as in a case of assault, there was strong prov-
ocation, and where, as in case of slander, etc., there
were facts tending to prove mitigation of damages, the
courts have refused to interfere with nominal verdicts,
although on first blush they may appear illogical.   It
would serve no useful purpose to collate the cases or
undertake to distinguish them, for they abound in nice
refinements, and, after all, each case depends upon its
own merits and can not be settled off hand on a mere
general rule.   The various propositions asserted above
may be found discussed and applied in Weinberg v.
Railroad, 139 Mo. 286; Haven v. Railroad, 155 Mo. 216;
Dowd v. Westinghouse Air Brake Co., 132 Mo. 579;
Overholt v. Vieths, 93 Mo. 422; Leahy v. Davis, 121
Mo. 227; Watson v. Harmon, 85 Mo. 443; Gregory v.
Chambers, 78 Mo. 294; Pritchard v. Hewitt, 91 Mo. 547;
Boggess v. Railroad, 118 Mo. 328; Goetz v. Ambs, 22
Mo. 170; Fairgrieve v. City of Moberly, 29 Mo. App.
141; Chouquette v. Railroad, 152 Mo. 257.

"In Pritchard v. Hewitt, 91 Mo. l. c. 550 et. seq.,
after quoting approvingly the reasons for the general
rule of non-interference from Graham and Waterman on
New Trials, to the effect that, 'The reason for holding
parties so tenaciously to the damages found by the
jury in personal torts is, that in cases of this class
there is no scale by which the damages are to be grad-
uated with certainty. They admit of no other test than
the intelligence of a jury governed by a sense of justice
. . . To the jury, therefore, as a favorite and almost
sacred tribunal, is committed, by unanimous consent,
the exclusive task of examining the facts and circum-
stances, and valuing the injury and awarding com-
pensation in damages.   The law that confers on them
this power and exacts of them the performance of
this solemn trust, favors the presumption that they are
actuated by pure motives,   . . .   and it is not until
the result of the deliberation of the jury appears in a
form calculated to shock the understanding and impress
no dubious conviction of their prejudice and passion

that courts have found themselves compelled to interpose,' BRACE, J., speaking to the point says: 'Of course it goes without saying that actions *ex delicto*, wherein the damages may be measured with some degree of certainty, are not within the rule, and that those cases where the damages, under the circumstances, are such as to shock the 'understanding,' and induce the conviction that the verdict was the result of either passion, prejudice, or partiality, are exceptions to this rule.'

"In Haven v. Railroad, supra, the court, *nisi*, set the verdict aside for inadequacy, and its action was sustained by this court. MARSHALL, J., discussing the matter now in hand, said: 'In other words, where a jury has returned a verdict for nominal damages in a case where the plaintiff is not entitled to any damages, the verdict will not be set aside in the appellate court at the instance of the plaintiff.'

"When it is determined, as must be in the case at bar, that there was persuasive evidence of the negligence of respondent city, and when it is determined, as it must be, that there was little or no evidence showing a want of care on the part of the appellant, and that all the evidence in that behalf fell from her own lips and when fairly considered does not show want of due care, and when the serious character of the injuries of appellant stands confessed, as here, it follows, we think, that the verdict of the jury in this case ought not to be attributed to a benevolent disposition on the jury's part toward appellant in the matter of costs, and as a finding for respondent city based on the substantial evidence, but must be attributed to whim and arbitrariness and a disposition to play fast and loose with the law and the substantial rights of appellant, and should be explained alone as the product of prejudice or some kindred motive.

"Holding these views, we conclude the learned circuit judge erred in not sustaining appellant's motion for a new trial, and therefore the cause is reversed and remanded with directions to the lower court to set

aside the order overruling appellant's motion for a new trial; to sustain that motion and grant appellant a new trial; and for further proceedings in the cause.''

The same rule is announced in the following cases: Watson v. Harmon, 85 Mo. 443; Fury v. Merriman, 45 Mo. 500; Pritchard v. Hewitt, 91 Mo. 547; Edwards v. Railway, 82 Mo. App. 585.

Viewing the facts of this case as disclosed by the uncontradicted evidence, in the light of the authorities considered, we are clearly of the opinion that the jury was actuated either by prejudice or passion, or was guilty of a mistake in computing the plaintiffs' damages, or that they disregarded the instructions of the court, in assessing the amount of damages the plaintiff had sustained; and it is against the plain letter and spirit of the law and should not be permitted to stand.

III.  There are some other minor questions presented, but they in on manner can change the result arrived at, so we will not consider them.

For the reasons stated, the judgment is reversed and the cause remanded with directions to the circuit court to retry the case in harmony with the views herein expressed.

The foregoing opinion of *Woodson, J.,* in Division One, is adopted as the opinion of Court in Banc. *Walker, Faris* and *Graves, JJ.,* concur; *Williams, J.,* concurs in the result; *Blair, J.,* dissents; *Bond, C. J.,* not sitting.