Harold D. MORGAN, (Plaintiff) Appellant,

v.

Dr. Henry ROSENBERG (Defendant) Respondent.

No. 31106.

St. Louis Court of Appeals.

Missouri.

Sept. 17, 1963.

686

Hal B. Coleman, Coleman, Ross & Cekovsky, Clayton, William L. Mason, Jr., St. Louis, for appellant.

Guilfoil, Caruthers, Symington & Montrey, John P. Montrey, Koenig, Dietz & Siebels, Paul H. Koenig, St. Louis, for respondent.

RUDDY, Presiding Judge.

This is an action to recover damages resulting from the alleged malpractice of defendant, a physician and surgeon. The jury returned a verdict for $9000. Defendant's motion for a new trial was sustained on the ground that the trial court erred in giving plaintiff's Instructions No. 1 and No. 4 and plaintiff appealed.

Defendant contends that plaintiff did not make a submissible case for the jury and, therefore, plaintiff's claims of error are moot. This contention of defendant requires a full summation of the evidence. Before stating the evidence, we set out the pertinent allegations of the petition.

Plaintiff alleged that he consulted the defendant and was told by defendant "that it

was necessary in the opinion of the defendant to remove plaintiff's gallbladder; * * and that in fact did operate on this plaintiff on the 4th day of June, 1958." It is further alleged by plaintiff in said petition that defendant "did cut open his abdomen and at said time removed plaintiff's appendix but carelessly and negligently failed to remove plaintiff's gallbladder, thereafter sewing up the opening in plaintiff's abdomen."

It is then alleged that defendant told plaintiff that he had removed plaintiff's gallbladder and appendix. It was further alleged in said petition, "that thereafter on or about the 22nd day of July, 1958, this plaintiff ascertained that the defendant had not removed his gallbladder and thereupon said plaintiff took prompt action to alleviate his pain, suffering, weakness and disability and was obliged to undergo additional major surgery and have his abdomen opened for a second time to have his gallbladder removed."

In specifying the negligence charged, among other items, plaintiff alleged, "that the defendant did carelessly and negligently fail and omit to remove the gallbladder of the plaintiff."

The evidence shows that plaintiff's wife called the defendant and told him that her husband was having "severe pains in his chest." Defendant told her he would see her husband at the Park Lane Hospital. Plaintiff appeared at the hospital about the 1st or 2nd of June, 1958. Plaintiff told defendant that he had pains in his chest and under the ribs. Defendant examined plaintiff and told him that his gallbladder would have to be taken out and that the operation would entail "a complete removal of the gallbladder." Defendant told plaintiff's wife that her husband's gallbladder was bad-. ly infected and that he recommended surgery as soon as possible. Thereafter, the surgery was performed and after the operation defendant told plaintiff that he had taken out the appendix of plaintiff and that he had taken his "gallbladder out and had clipped the end of the ducts." After the

operation defendant told the wife of plaintiff, "Mrs. Morgan, your husband is doing fine. * * * I operated on him and just as I thought, his gallbladder was bad, * * * but it didn't have stones, * * * it was quite a tough job, because it was an extra large gallbladder and twisted up into his liver, and it was quite complicated." Defendant told plaintiff's wife that he had removed the gallbladder from her husband.

After the operation plaintiff stayed in the hospital on a liquid diet for seven to nine days during which time he had no pain in his chest. Thereafter, he came home. At some time after his return home, his wife prepared some mashed potatoes and after eating some he experienced the same kind of pain he had prior to the surgery. The date of this experience is not given by plaintiff in his testimony. He returned to the Park Lane Hospital and after an examination by the defendant, plaintiff was told by defendant that his tonsils should be removed. Defendant told him that the pain in his chest and behind his right shoulder blade was from his tonsils. Plaintiff submitted to an operation for the removal of his tonsils and adenoids and after four to six days in the hospital he left for home. While in the hospital on this occasion plaintiff was placed on a "gallbladder diet" and experienced no further pain. Some time thereafter plaintiff asked defendant if he could go on a fishing trip and defendant told him that he did not want him to go and that he did not want him to have any exertion and told him to stay at home. Plaintiff disregarded this advice and went fishing at Malden, Missouri, and upon arriving there suffered another attack of pain. He returned from Malden, Missouri, and again entered the Park Lane Hospital. After four days in the hospital on a liquid diet he was permitted to go home. No surgery was performed on this occasion. When plaintiff arrived home after this third visit to the hospital he said that "the wife had cooked a big dinner, a beef roast, I very well remember, and I eat quite a bit. I was pretty hun-

gry, and then that night I began to have another attack."

Thereafter, plaintiff's wife contacted Dr. Kellett and was instructed by him to bring plaintiff to the Alexian Brothers Hospital. When he got to the Alexian Brothers Hospital his complaints were the same as they were during the previous two months, namely, the attacks of pain in the chest and behind the right shoulder blade. Examination and tests were made of plaintiff by Dr. Litzow and Dr. Kellett. Thereafter, an operation was performed by Dr. Litzow. Plaintiff remained in the Alexian Brothers Hospital approximately one week and after the surgery at this hospital he never had any more pain such as he had experienced before. Since returning to his home from the Alexian Brothers Hospital he has eaten any and everything he wanted to and did not experience any pain.

The records of the Alexian Brothers Hospital were introduced in evidence by plaintiff. The record was dated July 23, 1958, and showed an admission diagnosis, "Gallbladder colic may be due to stones." It further showed a pre-operative diagnosis of "cholecystitis and cholelithiasis." Cholecystitis is a term which means inflammation of the gallbladder and cholelithiasis means the presence of gallstones. A note in the record under gross findings was the following: "Anesthetic started 10:50 A.M. This patient had had a previous gallbladder operation which supposedly, according to the patient's statement, entailed the removal of his gallbladder. However, a visualization by means of a radiopaque dye shows a gallbladder with stones."

Under the heading "Technique" the hospital records showed that "the abdominal cavity was entered. There were multiple and massive adhesions around the gallbladder bed and these were freed." Dr. Robert Kurth, a witness for plaintiff, explained this entry as follows: "When there is a state of inflammatory pain in a structure such as this, which lies in close proximity to the duodenum, to the stomach, to the

transverse colon and other structures in this area, there is a tendency for the inflamed part to become adherent to the surrounding structures, by virtue of the inflammation. These are called adhesions." Under the heading of "Technique" the hospital record further showed the following, "The portion of the gallbladder that was visualized on X-ray was easily found. The common duct was exposed." The hospital record further showed that "the gallbladder remnant was removed from its bed with the two stones."

The only medical witness to testify in behalf of plaintiff was Dr. Robert Kurth who testified that he is a medical doctor and that his work is limited to general surgery, primarily in the abdomen. He described the structure of the gallbladder as a hollow sacular type structure with a duct or tube which communicated with the common bile duct and said the primary function of the gallbladder was to store bile. He further testified that when one has pain associated with the gallbladder it would generally be located in the area of the ribs, in the right high abdomen which he described as the right upper quadrant. He said the eating of fatty foods, fried foods, gas-forming vegetables and certain other foods would tend to precipitate a bout of gallbladder pain if there is a diseased gallbladder. When he was asked what causes the formation of gallstones defendant's counsel objected to it on the ground that the evidence solicited was outside the scope and issues found in the pleadings and was a purely general question and improper. This objection was overruled. We add here that a similar objection was made numerous times throughout the trial. The witness was asked if the gallbladder or the associated ducts can regenerate themselves after a gallbladder has been removed and the witness answered: "The answer to my knowledge is no."

He stated that when the term cholecystectomy is used it implies a complete removal of the gallbladder. The witness explained that the cystic duct is the duct from the gallbladder communicating with the common duct. He said the cystic artery is the

artery that supplies the blood to the gallbladder and is a branch of the hepatic artery.

A hypothetical question was propounded to this medical witness which contained many assumptions, among which were: that a doctor making an examination of a patient tells the patient that his gallbladder is diseased, and that it must come out by surgery and after the operation tells the patient he has removed all of his gallbladder. The question further assumed that the patient has the same pains after the operation as he had before, and that later surgery is performed by another doctor and surgeon who removes the gallbladder remnant with two stones, and it is further assumed that after the operation the pain in the chest and on the right side of the patient has subsided. The witness was then asked: "Now do you have an opinion as to whether or not the doctor, in performing this surgery, in failing to remove all of the gallbladder and stones, exercised the skill and care which would ordinarily be exercised by a general practicing physician who performed surgery of this nature in this community?"

Defendant objected to this question. The substance of his grounds for the objection was that the question assumed facts which were not in evidence and assumed facts which were outside the scope of the pleadings. In support of his ground that the question assumed facts which were not in evidence, defendant stated there was no showing that defendant held himself out as a specialist in surgery; no showing that one month later a second operation was performed and further stated that there was a contradiction in that at one place in the hypothetical question plaintiff mentions taking out a gallbladder and at another place he mentions taking out only a remnant of the gallbladder. There was no enlargement on the ground that the question assumed facts which were outside the scope of the pleadings. The objection as stated was overruled by the court and the witness then answered, "I would have to say that the first surgeon apparently did not remove this intact, and apparently it was not up to the standards of that particular area." The medical witness further answered: "Well, in this hypothetical case I would say that the ordinary skill and care was not exercised." He then stated that if one exercises the ordinary skill and care and follows the standard procedure of this particular operation, the entire gallbladder should have been removed.

This witness said he was familiar with the situation in which there is a dilation of the cystic duct stump following a gallbladder removal. When asked if this was an ordinary complication in this type of surgery, he answered, "I would say not a common complication." He added that it does occur, however, and occurs with the best of surgeons even "where they are in that specialty." He said that sometimes the surgeon will enter the abdomen and for a good reason will not remove tissue which the surgeon previously thought would be removed. He said that stones could form in the common duct and in the hepatic duct and when asked if these stones, in the matter of 40 or 50 days following surgery, could move into that cystic stump, he answered, "that would be in the realm of possibility. Q. It happens, doesn't it, Doctor? A. Not in my experience." Later on he said it can happen. When asked if one in every 3000 persons studied by anatomists have a duplication of the gallbladder in their body, he answered it was true. In the case of the duplicated gallbladder which he referred to as a "pseudo structure" he said that it could be visualized on the cholangiogram or x-ray procedure. He said that gallstones do require some time to form but could not give the time element. However, he said he could not conceive of one of any size forming in four or five weeks. He admitted, however, that stones can migrate from other areas and move down into the dilated cystic duct or the pseudo gallbladder. However, on redirect examination he said that stones would not move into the cystic duct if in the operation the cystic duct had been cut off and clamped

off by a surgeon. This concluded the evidence in plaintiff's case.

Defendant testified that he examined plaintiff about June 1, 1958, and based on this examination and others made and tests performed and consultations with other medical men, his diagnosis "was acute cholecystitis and appendicitis and myocardial damage." He said that evidence of the myocardial damage came from the interpretation of Dr. Makada of his electrocardiography. He operated on plaintiff June 4, 1958, at the Park Lane Hospital. He testified to the preliminaries in connection with the operation and identified the various organs in the abdomen and described the relationship of the gallbladder to the cystic duct. He then said, "I saw this gallbladder, large and greenish in color, and pretty good size. Now, in addition to what I saw on this particular patient was that the omentum, which is an apron of body tissue that is nature's defense mechanism or nature's watchdog, whenever there is any irritation at any place, the omentum goes down and attaches to it and becomes adherent. That is what an adhesion is. And there was on the fundic portion, and also on the lower portion, attachments of the omentum, which had to be removed before the gallbladder was attempted to be removed."

He explained his exploration of the vital areas around the gallbladder and then testified, "So before I attempted to remove the gallbladder, I ascertained myself of the contents as well as I could, and also of the narrow portion down here that is the cystic duct or tubule, and found no evidence by my fingers of stones." He said that he had anticipated stones and so declared himself on the hospital chart but that he did not find any. In describing the removal of the gallbladder he testified, "I made a little cleavage point there, with a knife, and with a sponge forceps grabbed ahold of it, and with my finger and gauze, shelled it out, not with a knife but just with nature's cleavage line, down to where I could see the cystic duct begin and down

as far as where the cystic artery could be felt by my fingers, and its pulsation."

He said he placed the ligature or tie close to the union of the cystic duct with the gallbladder but far enough away so there would be no leakage or spillage of bile into the abdomen. Thereafter, he removed the appendix of plaintiff and stated that he put the gallbladder and the appendix in a pan that was taken to the laboratory to be examined by the pathologist.

Plaintiff came under the care of the defendant at a later date, namely, June 24, 1958, and was discharged from the hospital June 28, 1958. On this visit of plaintiff to the Park Lane Hospital defendant said he removed the tonsils and adenoids of the plaintiff. The defendant testified that on this occasion the hospital records showed no complaint of lower or upper abdominal pain.

Defendant maintained that he removed the gallbladder "intact." When asked about the pain plaintiff said he had after he was discharged from the Park Lane Hospital the first time, defendant answered, "Pain following the operative procedure that I performed on Harold Morgan is many times attended with some post-operative pain. The length of time in which it occurs, and the degree to which it occurs, if it does occur, depends upon the factors of a person's food and gas formation, and the respect that the person gives his body by freedom from activity * * *. It is very common to have pain following a gallbladder operation. It is very, very often." In connection with the plaintiff's third visit to the Park Lane Hospital, defendant read his final diagnosis from the hospital record, which showed, "(1) neurasthenia with neuro-circulatory asthenia, cause not determined. (2) vasomotor instability." The defendant explained that neurasthenia is a weakness of the nervous system. The hospital record showed that on plaintiff's third visit he complained of pain in the chest above the nipple line and in the upper abdomen under the ribs.

Drs. Edwin F. Vitt, Dean Sauer and Falls B. Hershey testified as witnesses in defendant's case. A composite summary of their testimony shows that surgery was their specialty and that Dr. Hershey in addition to following the specialty of surgery was an associate professor in surgery on the teaching staff of Washington University in their School of Medicine. Their testimony showed that there were probably many procedures followed in an operation for the removal of a gallbladder; that where the cystic duct is short an accepted procedure necessitates tying off part of the gallbladder and that many surgeons still leave a small amount of gallbladder in the area of the cystic duct to safeguard anything that could happen to the common duct. Their testimony further showed that there is always a possibility the cystic duct may dilate and that a dilated cystic duct may give the appearance of a gallbladder on an x-ray. Their testimony further showed that stones may be hidden in the biliary tree and after surgery descend to the area of the cystic duct. They said there was no way that the surgeon could control such a development. All agreed that it was not unusual to have the pain described by plaintiff following the operation. Dr. Hershey stated that pains following the first operation might possibly come from the remainder of the gallbladder within the person or might come from new stones or from an infection. Dr. Vitt testified that the cystic duct is also referred to as gallbladder tissue. Dr. Hershey testified that it is hard to say "exactly where one ends and the other begins," i. e. where the gallbladder ends and the cystic duct begins. He further testified that he could not distinguish a reformed gallbladder from a so-called remnant, stating "I don't know any way to tell whether it is formed again or whether it was left before. I don't know how. If I were operating on such a patient, not knowing exactly what happened before, it could as easily form again as it could have been left. They both look exactly the same. They both would

be a sack containing bile attached to the location there."

Dr. Charles L. Klenk, a pathologist at the Park Lane Hospital, testified that he prepared and signed the report of the pathology contained in the hospital records and that he personally examined the matters referred to in the report. He testified that the gallbladder referred to in the report was that of the plaintiff and that it was intact. He said that if the gallbladder had been cut off somewhere the hospital report would not show this fact and as far as he was concerned he merely had a gallbladder and could not tell at this time what the bladder looked like other than what was shown in the report.

Dr. Sam John Merenda, offered as a witness by defendant, testified that he was a physician specializing in radiology. After an examination of some of the x-ray pictures taken at the Alexian Brothers Hospital prior to the operation performed by Dr. Litzow, he stated he could not identify a gallbladder on any of the pictures and gave it as his opinion that the pictures disclosed the existence of a dilated cystic duct and two gallstones. He testified that if there was a gallbladder present in plaintiff at the time the pictures were taken, it would show up on the x-ray pictures.

Plaintiff's verdict directing instruction required the jury to find:

" * * * that the defendant failed to remove all of said gallbladder, and that it was thereby necessary for plaintiff to undergo further surgery for the removal of a remnant of his gallbladder and two stones therein, and to thereby sustain prolongation of his symptoms and injury to his person, if you so find; and if you further find that in so failing to remove all of plaintiff's gallbladder the defendant did not exercise such skill and care as is ordinarily exercised by medical doctors engaged in general practice and surgery, in good standing and practicing in this community; and that the defendant was negligent, if

you so find, and if you further find that the prolongation of plaintiff's symptoms and injury, if any, caused by the need for additional surgery, occurred as a direct and proximate result of said negligence, then your verdict should be in favor of plaintiff * * *."

The pleadings, the evidence and the verdict directing instruction present a somewhat confused picture. The pleadings charge that defendant did carelessly and negligently fail and omit to remove the gallbladder of the plaintiff. The evidence shows that the gallbladder was removed except a remnant of same which was removed with two stones in the second operation that took place in Alexian Brothers Hospital. The sole medical witness for the plaintiff testified that defendant did not exercise the required skill and care in performing the surgery in the first operation in failing to remove all of the gallbladder *and stones.* In this connection we hasten to point out that there is not a scintilla of evidence in the record showing the existence of stones in the area of the gallbladder at the time defendant performed the first operation in the Park Lane Hospital.

Plaintiff's medical witness did testify that if a surgeon exercises the ordinary skill and care and follows the standard procedure of this particular operation, the entire gallbladder should have been removed. We have no way of telling from this record whether this medical witness in so answering the hypothetical question propounded to him meant to include the stones, which were included in the question calling for his opinion as to whether or not the defendant in performing the surgery exercised the requisite skill and care. Adding to this apparent confusion was the instruction heretofore recited which required the jury to find that it was necessary for plaintiff to undergo further surgery for the removal of a remnant of his gallbladder "and two stones therein." It is true that in another part of the instruction the jury was required to find only that defendant failed to

remove all of plaintiff's gallbladder and in so failing did not exercise such skill and care as is ordinarily exercised, yet, in the concluding sentence of the instruction the jury was told, "if you further find that the prolongation of the plaintiff's symptoms and injury, if any, *caused by the need for additional surgery* occurred as a direct and proximate result of said neglect, * * *" then the jury was instructed that its verdict should be in favor of the plaintiff. We think the confusion created by the evidence, particularly the answer to the hypothetical question propounded to Dr. Kurth, was compounded when the court required the jury to find that it was necessary for plaintiff to undergo further surgery for the removal of a remnant of his gallbladder and two stones therein.

Malpractice may result either from injury to a plaintiff sustained as a result of the physician or surgeon's want of the requisite knowledge and skill or from injury resulting from the negligent omission or failure to use and exercise the necessary care and skill which is a charge of negligence. Williams v. Chamberlain, Mo., 316 S.W.2d 505, 1. c. 510; Gunter v. Whitener, Mo.App., 75 S.W.2d 588. In the instant case plaintiff charged negligence on the part of the defendant.

The rules relating to burden of proof in negligence actions are applicable in an action against a physician or surgeon for malpractice and plaintiff in this case has the burden to establish every fact necessary to constitute his cause of action. The burden is upon the plaintiff to prove negligence and plaintiff's burden embraces not only proof of negligence but proof also that the negligent act or acts caused the injury. Williams v. Chamberlain, supra, 1. c. 511 of 316 S.W.2d.

In reviewing the contention of defendant that plaintiff did not make a submissible case for the jury, we must view plaintiff's evidence and all reasonable inferences therefrom favorably to plaintiff

and disregard evidence unfavorable to plaintiff.

In the instant case where the exercise of proper skill and care on the part of the defendant is in issue, expert medical testimony is essential. In the case before us a submissible case may only be made by expert medical testimony for otherwise a jury may not know (or guess) whether defendant's acts did or did not conform to the required standards. Williams v. Chamberlain, supra; Pedigo v. Roseberry, 340 Mo. 724, 102 S.W.2d 600. The reason for such a rule becomes obvious because the ordinary layman can have no knowledge in such a case whether the proper treatment was given or procedure followed by the physician and surgeon. In defining the rule governing the care required of a physician, the court said in Williams v. Chamberlain, supra:

"While the rule has been stated with slight variations from time to time, it may properly be said that a physician is required to use and exercise that degree of care and skill used and exercised by the ordinarily skillful, careful and prudent physician acting under the same or similar circumstances. See generally: (Cases cited) * * *. In stating or approving definitions, however, our courts have often included such additional terms as 'in * * * similar communities' * * * or 'practicing in similar localities' * * *. We have no quarrel with the inclusion of the element of 'similar localities' in the definitive requirement and probably it is properly included. So long as the physician properly exercises his skill and the requisite degree of care, he is not liable for an honest error of judgment." (316 S.W.2d 1. c. 510).

Plaintiff, evidently aware that a submissible case could only be made against defendant by expert medical testimony, called Dr. Robert Kurth. However, defendant contends that plaintiff elicited a meaningless expert opinion from this medical witness. He contends the opinion was meaningless because it was based upon assumed facts not supported by the record evidence. He contends that the hypothetical question asked assumed that the defendant failed "to remove all of the gallbladder and the stones." Defendant points out that upon this assumption and others contained in the hypothetical question Dr. Kurth testified that the first operation "apparently" was not up to standards and finally "that the ordinary skill and care were not exercised." As we pointed out earlier, there is no evidence in the record that gallstones were present when defendant first performed surgery. As pointed out by the defendant, the only evidence in the record is that there were no gallstones when defendant performed the operation at the Park Lane Hospital.

Dr. Kurth testified that stones can migrate from other areas into the cystic duct area and also testified that it was possible for small stones to form. The only expert medical opinion upon which a submissible case could possibly be predicated was that given by Dr. Kurth and his opinion was based on an assumption that the hypothetical surgeon failed to remove all of a gallbladder and existing gallstones. His answer was, "Well, in this hypothetical case, I would say that the ordinary skill and care was not exercised." It is true that he also said that if one exercises the ordinary skill and care and follows the standard procedure of this particular operation, the entire gallbladder should have been removed. In this part of his testimony he makes no reference to the gallstones. We have no way of knowing, nor did the jury, whether his reference to the entire gallbladder included within it existing stones.

Where, as here, the only expert medical opinion favorable to plaintiff is based on a hypothetical case which assumes that the surgeon failed "to remove all of the gallbladder and stones" coupled with a required finding in plaintiff's instruction that it was "necessary for plaintiff to un-

dcrgo further surgery for the removal of a remnant of his gallbladder and two stones therein," we think the evidence and the instruction would raise in the minds of the jury the question whether they were to consider defendant as failing to exercise the required care and skill in the failure to remove all of the gallbladder (the remnant) *and the stones* or want of skill and care on the part of the defendant in failing to remove only "all of the gallbladder." Such a confused situation presented to lay jurors can only result in a verdict based on conjecture and surmise. We think this is so despite the testimony of Dr. Kurth wherein he said that if one exercises the ordinary skill and care and follows the standard procedure of this particular operation, the entire gallbladder should have been removed. As we said before, we have no way of knowing whether this medical witness in his reference to the entire gallbladder intended to include within it existing stones.

In further support of his point that plaintiff did not make a submissible case for the jury, defendant contends that there is no expert medical evidence showing that plaintiff's subsequent state of ill health was directly or proximately caused by the alleged failure on defendant's part to remove all of the plaintiff's gallbladder. In support of this contention defendant cites Pedigo v. Roseberry, supra. In that case the Supreme Court said:

> "The mere fact that injury follows · negligence does not necessarily create liability. The burden of establishing by substantial evidence appellants' negligence as charged and the necessary causal connection between such negligence and the injury alleged rested upon respondent. And, if the evidence merely established that the injury might have resulted from several causes for some but not all of which appellants were liable, the necessary causal connection remained in the realm of conjecture and speculation and respondent's case failed." (102 S.W.2d l. c. 608.)

The evidence shows that plaintiff suffered the same type of pains and in the same general area after the first operation as he had prior to the first operation and that the pains ceased after the last operation. The only expert medical testimony in behalf of plaintiff in this connection was that contained in the hypothetical question wherein Dr. Kurth was asked to assume that the patient had the same pains after the operation as he had before. This appears to be sufficient evidence to support a submission of defendant's acts, if found to be negligence, as a cause of plaintiff's subsequent ill health. However, here again, we are met with the same confusion we discussed heretofore, because the medical expert's opinion in answer to the hypothetical question was based on the assumption that in the second operation a remnant of a gallbladder was removed together with stones.

■ On numerous occasions throughout the trial defendant objected to questions that called for evidence "outside the scope of the pleadings" and the trial court overruled these objections. Some of the objections specified the evidence sought to be elicited that defendant claimed was outside the scope of the pleadings. As pointed out by us in summarizing the testimony of Dr. Kurth, when he was asked by plaintiff's counsel what causes the formation of gallstones, defendant's objection on the ground the evidence solicited was outside the scope of the pleadings was overruled. It is true that on other occasions when a similar objection was made, the basis of the objection was that the question concerned a gallbladder remnant, whereas the petition merely charged defendant with failure to remove the gallbladder. We think evidence showing the failure to remove a gallbladder remnant was within the purview and scope of the pleadings, whereas the evidence on the part of plaintiff showing the removal of gallstones, in addition to the remnant of the gallbladder, was outside the issues posed by the pleadings. For this reason the court erred in overruling the objections that were directed to the effort of plaintiff to bring into the

case the failure of defendant to remove gallstones when he performed the first operation. As we have pointed out, there is no evidence showing the existence of gallstones at the time the first operation was performed. We have pointed out that this error in the admission of the evidence was carried into plaintiff's verdict directing instruction. In the case of State ex rel. Central Coal & Coke Co. v. Ellison et al., 270 Mo. 645, 195 S.W. 722, l. c. 724, the Supreme Court said:

> "When a trial court admits evidence (erroneously) beyond the issues made by the pleadings and then instructs (erroneously) upon such evidence, it is requiring the defendant to meet an issue of which it had no notice by the service of process and the petition. The defendant is entitled to know from the petition just what he is called upon to defend, and we cannot say that it is harmless when he is called upon to defend (without notice) a different negligent act."

We think the introduction of evidence of the removal of gallstones in the second operation and the inclusion in the hypothetical question propounded to Dr. Kurth of the assumption that defendant failed to remove the two gallstones together with the remnant of the gallbladder when he performed the operation in question was error because evidence of the failure to remove the gallstones was an issue beyond the scope of the pleadings and one which defendant should not have been called upon to meet.

The trial court apparently was aware of its error when it sustained defendant's motion for a new trial and gave as its ground for such action error in giving plaintiff's verdict directing instruction. The court gave as one of its reasons for sustaining the motion for new trial the grounds set out in defendant's motion for new trial under paragraph (p). The court directed particular attention to subparagraph 5 of said paragraph (p) which contended that the instruction was broader than the evidence and that there was no substantial evidence of causation. The court in sustaining defendant's motion for new trial also included all of the other objections under paragraph (p), some of which charged that the instruction submitted a theory of negligence which was beyond the scope of plaintiff's petition. We think that because of the erroneous admission of the evidence concerning the gallstones and the inclusion of this erroneous evidence in plaintiff's instruction No. 1, this case should be remanded for a new trial. We are aware that it was incumbent upon plaintiff to adduce evidence sufficient to make a submissible case. We believe that this record shows that upon a retrial of the case if reference to the removal of the gallstones is omitted in the hypothetical question propounded to Dr. Kurth and all evidence concerning the removal of the gallstones is omitted, that plaintiff can make a submissible case if Dr. Kurth again gives it as his opinion that the defendant should have removed the entire gallbladder of the plaintiff when the first operation was performed and that failure to do so was a failure to exercise ordinary skill and care under the circumstances.

Significantly absent from this record is the testimony of Dr. Litzow, the surgeon who removed the gallbladder remnant and the stones. The attorney for plaintiff informed the trial court that he had "a subpoena out" for Dr. Litzow but had been unable to contact him. He also informed the court, "I am trying to get ahold of Dr. Litzow, and I can't get him in, to be right honest about it." The apparent failure of this doctor to cooperate in this proceeding is a matter of concern to this court. We are aware of the difficulty that lawyers face in procuring the testimony of some medical men in this type of action. We believe that the testimony of Dr. Litzow is very important to the proper administration of justice in this case. According to the record, he performed the second operation and he is the only one, together with Dr. Kellett, who can possibly tell the story

about the gallbladder remnant found in plaintiff, its size, its condition, etc. It seems that the testimony of this witness could either exculpate the defendant from the charge of the petition or assist the plaintiff in a proper recovery. We think this doctor's duty as a citizen and as one who should be interested in the proper administration of justice transcends any feeling, protective or otherwise, he may entertain for a member of his profession. On a retrial of this case his testimony should be made available to the court and jury.

The trial court in ordering a new trial gave as an additional ground its error in giving Instruction No. 4, which was a measure of damage instruction complained of by defendant, on the ground there was no evidence that the expenditures for the special damages were reasonable. There is no need to discuss this instruction. The missing evidence, if available, we are sure will be supplied in the next trial.

The order and judgment of the trial court sustaining defendant's motion for new trial is affirmed.

WOLFE and ANDERSON, JJ., concur.