**AETNA INSURANCE COMPANY,**
a Corporation, Appellant,

v.

**HELLMUTH, OBATA & KASSABAUM,
INC.,** a Corporation, Appellee.

No. 18875.

United States Court of Appeals
Eighth Circuit.

April 4, 1968.

Rehearing Denied May 7, 1968.

Richard M. Stout, St. Louis, Mo., for appellant; Thomas M. Richards, St. Louis, Mo., on the brief.

Donald L. James, of Moser, Marsalek, Carpenter, Cleary & Jaeckel, St. Louis, Mo., for appellee; F. X. Cleary, St. Louis, on the brief.

Before BLACKMUN, GIBSON and HEANEY, Circuit Judges.

GIBSON, Circuit Judge.

This case concerns the alleged negligence of an architect in supervising the construction of a project. The appellant Aetna Insurance Company, a Corporation, (Aetna) sued Hellmuth, Obata & Kassabaum, Inc., hereafter referred to as "Architect," for damages occasioned by the alleged negligent failure of the Architect in supervising the construction of a Terminal Plaza at Lambert-St. Louis Airport.

The jury awarded Aetna damages of $15,000 but the District Court (E.D.Mo.) sustained the Architect's Motion for Judgment in Accordance with its Motion for a Directed Verdict (n. o. v.) and alternatively awarded a new trial on all issues. Aetna appeals from the judgment entered n. o. v. and asks a remand for a new trial. The alternative new trial was awarded on the basis of inadequacies and errors in the instructions and these issues are not presented on this appeal. We reverse and remand for a new trial.

Factually: Westerhold Construction, Inc. entered into a contract with the City of St. Louis, Missouri, for the construction of a Plaza at Lambert-St. Louis Municipal Airport. Aetna signed this contract as surety for Westerhold guaranteeing Westerhold's performance. The Architect, in addition to designing the plans and providing the specifications, agreed to supervise the construction and, as listed in its written contract with the City, undertook "to perform professional services in the preparation of drawings and specifications and supervision of construction" and "general supervisory services and advice during the construc-

tion period." Aetna knew in undertaking to guarantee the performance of Westerhold that the Architect was the "engineer or architect in charge of work." The contract of employment of the Architect, however, does not define the terms "supervision of construction" or "general supervisory services."

The construction project met with many difficulties and delays. The Westerhold firm was in financial difficulties from the start and was unable to complete the project without financial assistance from Aetna. Apparently Westerhold used funds from this project to pay judgments resulting from the operation of other projects. Bills on this project, therefore, were left unpaid, though that phase of the work had been completed and Westerhold paid on the Architect's certification. Aetna asserts that the Architect was negligent in not making any effort at any time to ascertain to what use funds were being put, even after receiving reports that subcontractors and others were not being paid.

Aetna also alleges substandard performance by Westerhold in carrying out the construction project which necessitated increased costs and some duplication of the work. In particular: (1) A concrete retaining wall bulged noticeably, apparently due to deficiencies in the forms used and the failure to properly tie in the forms; part of this work had to be redone. An employee of the Architect noticed the misaligned forms and testified he spoke to Westerhold about it, but neither he nor anyone else with the Architect went back to check to see whether this situation was corrected before the concrete was poured; (2) The project included a sewer ditch that was 15 to 20 feet deep at its deepest point. The contractor excavated the ditch with mechanical equipment but left it open and unfilled for a period from two to three weeks, in which time the ditch eroded or sloughed (became V-shaped). The single-strength vitrified clay pipe, called for by the specifications, was unable to withstand the added pressure caused by the increased weight, due to the widening of the ditch (by erosion and sloughing), and the matter had to be corrected by redigging the deep ditch and replacing the sewer with double-strength pipe. There were also deficiencies alleged in the collapse of the vertical inlets to the sewer pipe, in the actual laying of the pipe, and the failure to backfill the ditch in accordance with good construction practices. The specifications provided for the contractor Westerhold to make tests of the backfilling in the presence of the Architect. However, no such tests were required or performed, nor had the Architect given the contractor any instructions with reference to the procedure to be followed on account of the sloughing condition. Because of this, some pavement had to be replaced on account of a settlement condition; (3) In addition to the repaving necessary by reason of the settlement condition of the sewer, some pavement had to be replaced because its appearance was not in accordance with specifications. Also, as an alleged result of the Architect's failure to properly supervise, the project was delayed beyond its completion date, causing additional expense in the performance of the contract.

The District Court in sustaining the Architect's "Motion for Judgment in Accordance with its Motion for a Directed Verdict" (n. o. v.) stated, "Plaintiff failed to demonstrate by substantial evidence that defendant breached any duty owed to plaintiff which would create liability on defendant." The appellee Architect contends that its duty under the contract ran only to the owner (City) and since there was no privity between Aetna and it, no cause of action was stated; and further points out that the construction job was completed in accordance with the plans and specifications.

■ This case in its present posture presents the question of whether a surety on a contractor's performance bond has a right of action for loss occasioned by

an architect's negligence in supervision of the construction project. The parties for the most part rely on the same cases but place a different interpretation on the holding and rationale of these cases. This is a diversity case, in a proper jurisdictional amount, and Missouri law controls.

We think the Missouri law allows a recovery to a surety for loss occasioned by an architect's negligence in failing to properly supervise a construction project where the architect is obligated by the contract or agreement to supervise the construction, regardless of the lack of privity.

The Missouri Supreme Court in Westerhold v. Carroll, 419 S.W.2d 73 (1967) held that privity of contract was not required in the case of a surety on a performance bond seeking recovery against an architect who was negligent in incorrectly certifying the amount of work completed and material furnished. That Court held the surety had a right to rely on the provisions of the construction contract between the owner and the architect, and to appreciate the fact that its risk would be less hazardous with the assurance of inspection and supervision than where there were no safeguards; and approved this Court's statement in Hall v. Union Indemnity Co., 61 F.2d 85, 88 (8 Cir. 1932) " * * * such provisions in a contract are as much for the protection of the surety as of the owner." [1]

*Westerhold* held that the architect was under a legal duty to the surety to exercise ordinary care in executing the certificates called for in the construction contract. The Missouri Supreme Court in a scholarly and extensive discussion of the law of privity and its erosion through the years, said the relaxing of the rule requiring privity " * * * should be done on a case-to-case basis, with a careful definition of the limits of liability, depending upon the differing conditions and circumstances to be found in individual cases" and that the rule requiring privity would no longer be followed blindly, and that unless the two reasons advanced in Winterbottom v. Wright, an old English case, 10 M. & W. 109, 152 Eng.Rep. 402 (1842) for the rule of privity "unlimited liability to an unlimited number of persons" and "that the parties to contracts would be deprived of control over their contracts" are present, that the rule would not be followed. 419 S.W.2d 77–79. In a case of this type there is no unlimited liability to an unlimited number of persons; and on the latter reason the Missouri Court held it non-existent because if the parties to the contract mutually agreed to change the provisions of the contract which inures to the benefit of the surety and the change results in increasing the risk of the surety, the surety is discharged from his liability either wholly or to the extent of his increased risk.

In approving our *Hall*, supra, decision the Missouri Court stated 419 S.W.2d at p. 79:

" * * * In this case, as in Glanzer v. Shepard, [233 N.Y. 236, 135 N.E. 275, 23 A.L.R. 1425,] the person not in strict privity of contract who would be injured by defendant's negligence was known, and the 'end and aim' of the provision of the contract with respect to payments was for the benefit of the surety, as well as for the owner. Also, to forego the requirement of privity of contract could not lead to excessive and unlimited liability or lead to endless complications in following out cause and effect. * * * No exposure to liability to an unlimited number, or to an indeterminate

---

1. In *Westerhold* the plaintiff was an indemnitor of the surety, but that fact is of no relevance in that opinion.

The *Westerhold* opinion was handed down by the Missouri Supreme Court subsequent to the District Court's ruling in this case and hence the District Court did not have the benefit of the *Westerhold* opinion in ruling on the post trial motions.

class, of potential claimants is involved." [2]

In a similar factual situation the U.S. D.C. for Minnesota in Peerless Insurance Company v. Cerny & Associates, Inc., 199 F.Supp. 951 (1961) held an architect liable for negligent certification of work performed by the contractor and for negligently failing to require the contractor to submit satisfactory proof that all bills and invoices had been paid. Privity was not required, the Court stating at p. 955: "Nor is privity of contract a requisite to make effective said duty, a violation of which constitutes actionable negligence."

Again in a similar factual situation of an alleged negligent release of funds to the contractor upon certification of an architect, the Supreme Court of Mississippi in State, for Use of National Surety Corp. v. Malvaney, 221 Miss. 190, 72 So.2d 424, 43 A.L.R. 1212 (1954) held that contract provisions for retainage of funds until work was completed and bills for labor and material paid were for the mutual benefit of owner and surety, and the architect's premature release of the percentage retainage funds was actionable, without privity, on general negligence principles, the architect breaching his duty to exercise due care to avoid a loss to surety by a premature release. This case was cited with approval by the Missouri Supreme Court in *Westerhold*

and appears to be declaratory of the common law on negligence principles as applied to an architect's duty to exercise due care in performing his contractual duties, express or implied, under a supervision contract of construction, regardless of the lack of privity between the surety and the architect. See annotations on this case 43 A.L.R.2d 1212; and Anno: Architect's Certificate—Liability, 43 A.L.R.2d 1227.

A failure to use due care under the circumstances in supervising other phases of the construction process, where a loss occurs to the owner or the surety as a proximate result thereof, should be equally actionable under *Westerhold* since the two reasons mentioned in that opinion (and as stated in Winterbottom v. Wright), of unlimited liability to an unlimited number of persons and the parties to the contract would be deprived of control over their contracts, are not present in the case at bar.

▮▮▮▮ We think an architect whose contractual duties include supervision of a construction project has the duty to supervise the project with reasonable diligence and care. An architect is not a guarantor or an insurer but as a member of a learned and skilled profession he is under the duty to exercise the ordinary, reasonable technical skill, ability and competence that is required of an architect in a similar situation; and if

---

**2.** That Court further detailed its reasonings at pp. 80 and 81:

"For these reasons we consider the rule requiring privity of contract to be inapplicable, and that we should determine the sufficiency of the petition by the application of ordinary rules of negligence.

"It is clear that an obligation may be assumed by contract out of which may arise a duty to others than parties to the contract. Helm v. Inter-Insurance Exchange for Automobile Club of Missouri, 354 Mo. 935, 192 S.W.2d 417, 167 A.L.R. 238; Lowery v. Kansas City, 337 Mo. 47, 85 S.W.2d 104, 110; 38 A.L.R. 403, 487–505. That is, a party by entering into a contract may place himself in such a relation toward third persons as to impose upon him an obligation to act in such a way that the

third persons will not be damaged. Wolfmeyer v. Otis Elevator Co., Mo., 262 S.W.2d 18.

\* \* \* \* \* \* \*

" 'The determination whether in a specific case the defendant will be held liable to a third person not in privity is a matter of policy and involves the balancing of various factors, among which are the extent to which the transaction was intended to affect the plaintiff, the foreseeability of harm to him, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to defendant's conduct, and the policy of preventing future harm.' Biakanja v. Irving, 49 Cal.2d 647, 320 P.2d 16, 65 A.L.R.2d 1358."

by reason of a failure to use due care under the circumstances, a foreseeable injury results, liability accrues. Whether the required standard of care was exercised presents a jury question. Miller v. DeWitt, 59 Ill.App.2d 38, 208 N.E.2d 249, 284 (1965), aff'd in relevant part, 37 Ill.2d 273, 226 N.E.2d 630 (Ill.1967).

This question was also considered by Judge Donovan in the Minnesota case of *Peerless,* supra, who aptly noted at pp. 953–954 of 199 F.Supp.:

> " * * * the standards of reasonable care, which apply to the conduct of architects, are the same as those applying to lawyers, doctors, engineers, and like professional men engaged in furnishing skilled services for compensation * * *.";

and that general negligence principles apply—" * * * reasonable care, which is such care as a person of ordinary prudence would have exercised under the same or similar circumstances * * *" is imposed on an architect as related to the skill, ability and professional competence ordinarily required of a person licensed to practice that profession. Also see, Fidelity & Casualty Company of New York v. J. A. Jones Construction Company, 325 F.2d 605 (8 Cir. 1963) (recognizing architect's liability to third parties for negligent supervision of a construction project).

▆▆▆ Appellee Architect also contends that Aetna failed to establish the standard of care owed by a supervising architect, failed to show a breach of any standard, failed to show any damages proximately resulting from the alleged negligence, and, therefore, failed to make a submissible case. Since this case will be re-tried no purpose would be served in elaborating on the evidence. The standard of care applicable is that of ordinary reasonable care required of a professional skilled architect under the same or similar circumstances in carrying out his technical duties in relation to the services undertaken by his agreement. This includes the knowledge and experience ordinarily required of a member of that profession and includes the performing of skills necessary in adequately coping with engineering and construction problems, which skills are ordinarily not possessed by laymen. The words in the architect's contract requiring "supervision of construction" or words of similar import are not words of art and should be accorded their ordinary and usual denotation. This should be true in the absence of evidence showing a different or more restrictive connotation. There is, however, evidence in the record of what an architect would ordinarily be required to do under the circumstances presented. While this evidence is not as extensive as might be desirable, it was sufficient to make a submissible case on negligence and damages.[3]

The Architect asserts that the word "supervision" is a word of art and that evidence must be presented of what constituted due care in the exercise of professional supervision. We do not think the common term "supervision" is used as, or understood to be, a word of art in the construction contract. If it is a

---

**3.** The issue of misapplication of funds paid to Westerhold for work performed, but used by it to pay debts other than those accrued on this project presents a more difficult question, unless the Architect was obligated under his contract to require the contractor to submit paid bills and invoices for labor and material. The present contract does not appear to have this express provision. An architect is not a guarantor nor would he ordinarily be charged with the responsibility of supervising the contractor's disbursements to subcontractors, materialmen, craftsmen and laborers. The contract of construction could call for the submission of paid invoices or receipts, which would, of course, change the factual situation in regard to the architect's responsibility. However, if the architect knew or should have known that the contractor was not paying his bills for material and labor on work already performed and on which he had been reimbursed, then the architect probably would have a duty to make inquiry and take steps to correct that situation before making any further certification on work performed. This phase of the dispute can be more fully developed at a re-trial.

word of art, the general rule requiring expert testimony to establish the standard of care applied to professions requiring knowledge, competency and technical skill would be applicable. Morgan v. Rosenberg, 370 S.W.2d 685 (St.L.Ct. App.1963) clearly held expert medical testimony is essential to establish the standard of proper skill and care required of a physician, as laymen have insufficient knowledge to pass upon that issue. The requirement of expert testimony on the standard of care was applied to architects in Paxton v. Alameda County, 119 Cal.App.2d 393, 259 P.2d 934, 938 (1953); and in Pittman Construction Company v. City of New Orleans, 178 So.2d 312, 321 (Ct.App., La.1965).

Most of the cases stating the general rule on expert testimony to establish the standard of professional care required deal with physicians and surgeons, but the same principle is applicable to attorneys, architects and engineers and other professional men. As Prosser, Law of Torts (3rd Ed.) points out at 164:

"Professional men in general, and those who undertake any work calling for special skill, are required not only to exercise reasonable care in what they do, but also to possess a standard minimum of special knowledge and ability."

Prosser notes that expert testimony is necessary to establish the standard of care required of those engaged in practicing medicine, as laymen are normally incompetent to pass judgment on questions of medical science or technique, but that

"Where the matter is regarded as within the common knowledge of laymen, as where the surgeon saws off the wrong leg, or there is injury to a part of the body not within the operative field, it has been held that the jury may infer negligence without the aid of any expert." ib. p. 167 (See cases cited in footnote 46.)

It is a matter of common knowledge that it is often difficult to secure the services of a professional man to testify in a case involving a claim of dereliction of duty by a fellow member in the profession. This undoubtedly holds true in architectural circles as well as others. There is some evidence in the case at bar regarding the duties of an architect in supervising a construction project and in carrying out his contract duties. This evidence is not as extensive as is desired but was sufficient to make a submissible case. It does appear that there are certain duties patently required of the architect that are within the common knowledge and experience of laymen serving as jurors. It requires no particular technical knowledge on the part of the jury to pass upon the failure to supervise the back-filling of the sewer ditch when specifically required under the contract, the failure to correct misaligned forms utilized in retaining and supporting a poured concrete wall, or the significance of a sewer pipe that is misaligned and crooked. The jury is competent to pass on these issues without knowledge of the professional skills and competency required of architects in the ordinary performance of their skilled duties. Questions relating to stress and strain and weight-bearing capacities of structual elements are beyond the ordinary comprehension of most laymen and the court and jury require expert enlightenment on issues of this type. It, therefore, appears that the general rule requiring expert testimony to establish a reasonable standard of professional care is necessary when issues are presented that are beyond the ordinary competency of laymen jurors, but is not necessary in passing on commonplace factual situations that the ordinary jury layman can readily grasp and understand.

We think that sufficient evidence is in the record to justify the submission of the issue of the Architect's negligence and that upon a re-trial more consideration can be given to any technical questions involved in the submission.

Reversed and remanded for proceedings not inconsistent with this opinion.